JAMES P. OWEN, Appellant, *v.* THOMAS C. EVANS, Respondent.

An assignee of a note secured by mortgage, both past due at the time of the assignment, takes them subject to all the equities which any person could enforce against the assignors. There is no distinction in this regard between equities existing in favor of the debtor and those in favor of a third person.

(Argued June 14, 1892; decided October 1, 1892.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made September 9, 1890, which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court, and reversed an order denying a motion for a new trial and ordered a new trial.

This action was commenced May 20, 1889, upon a written instrument dated November 25, 1872, whereby the defendant guaranteed the payment of a note and mortgage on that day assigned by him to one John Owen, the assignor of the plaintiff.

On the 20th of December, 1871, at Independence, Kansas, one Sarah A. Evans executed and delivered to the defendant her promissory note, dated at the time and place aforesaid, whereby she promised to pay to his order the sum of $750, as follows: $200 each year commencing March 1, 1873, until the entire amount was paid, with annual interest at the rate

of ten per cent "payable at the house of George H. Evans, Cherry township, Montgomery county, Kansas." At the same time she executed and delivered to the defendant a mortgage upon 160 acres of land in said county and state as collateral security to said note. November 29, 1872, the defendant, by an instrument under seal, assigned said note and mortgage to one John Owen and guaranteed the payment thereof with interest at the rate mentioned. April 12, 1889, John Owen purported to assign the mortgage to the plaintiff, "together with the *bond* accompanying said mortgage and therein referred to, and all sums of money due and to grow due thereon." The answer put at issue the alleged transfer to the plaintiff and set forth among other defenses, that in 1878, John Owen for a valuable consideration assigned the note and mortgage to one George H. Evans, the husband of the maker, and that he "still is the owner and holder" thereof.

Further facts are stated in the opinion.

*Thomas S. Jones* for appellant.

*M. H. Powers* for respondent.

VANN, J. At the close of the evidence the defendant asked leave "to go to the jury upon the question of whether or not there was a sale of the mortgage and note by John Owen to George H. Evans," as well as "upon all the questions of fact in the case," but the learned trial judge denied the application and directed a verdict in favor of the plaintiff for the sum of $1,276.23, the entire amount claimed. The General Term reversed the judgment entered on the verdict upon the ground that the question of ownership of the cause of action should have been submitted to the jury. The evidence addressed to that issue consisted mainly of letters written by John Owen, residing in Jefferson county, New York, to George H. Evans, residing in Montgomery county, Kansas, the answers of Mr. Evans with a single exception not having been produced. The following extracts embrace

the material parts of the correspondence so far as it was read in evidence: "July 29 (1877). I received a letter from Thomas saying that you wanted to buy the mortgage of mine; to talk business you can have it for $1,000, that is throwing off $150. * * * Now I would as leave take $1,000 as to come out there, for it would cost me a good deal to come out there, but if you do not see fit to buy the mortgage, I shall be out there this fall and shall be prepared to do something in regard to the mortgage on the property when I see the land." "September 3 (1877). I received your letter, and in reply to it, I would say that I· would take for the mortgage $900 if you want it, if not I will be out there soon." "November 29, 1877. I received your letter speaking of my brother wanting to come out there. * * * Now I want to know whether you want to pay me $900 or have me send my brother out there, for I am going to straighten it up some way soon." "January 27, 1878. I have concluded to take you to your offer of $850, one hundred cash, $750 March next. I had rather do that than to come out there, for I am all alone here this winter. I spoke to my brother of coming, but he is sick and cannot come at present." "February 17, 1878. I will let you have the mortgage if you pay me for it, as soon as you agree to pay me, for $850. I always do as I agree. All well." "June 9, 1878. I would like the balance of the money as soon as I can get it. Received of George Evans four hundred and twenty-five dollars to apply on mortgage, May the 10, 1878." (Signed) "John Owen. I received the draft about that time I think." The following cashier's checks drawn on a bank in Independence, Kansas, were produced by the defendant and read in evidence: 1. April 20, 1878, for $425, payable to the order of C. H. Evans, and indorsed by him as follows: "Pay John Owen or order, being for one-half of amount due him on S. A. Evans' mortgage." It was also indorsed by John Owen. 2. July 22, 1882, for $400, payable to the order of John Owen, and indorsed by him. 3. October 28, 1882, for $154.50, payable to the order of George H. Evans, and by him indorsed over

to John Owen, " being in full for amount due him on the S. A. Evans mortgage." The last check was returned to Mr. Evans by John Owen, in a letter written in his behalf by his attorney, Mr. Taylor, under the date of November 15, 1882, in which he said : " Yours of a recent date with draft on New York for $154.50 inclosed, is at hand, which contains an indorsement that it is a balance due on a mortgage, which is not according to our understanding, and, therefore, I return it. I gave you a proposition in 1878 that if you would pay $850 down, I would give you the mortgage, and you did not do it. I have given you the credit for the amount paid them in 1882. Received another payment and gave you the proper credit. And now ask me to accept this draft as a balance would be contrary to my precedent. There is now due on the mortgage about $900, and I will accept, if paid before the 1st day of January, 1883, $500 in full and you may let me know at once as I have a chance to change it and wish to do it at once." A letter from Mr. Evans to John Owen, dated October 7, 1877, was read in evidence by the plaintiff as follows : " Now, John, I will give you $100 cash down and the other $750 between now and March." The two sums of $425 and $400 were not indorsed on the mortgage by John Owen until the third check was returned, when, after taking counsel, he directed the indorsements to be made as payments on the mortgage. The amount of the three checks was equal to the price agreed upon by John Owen and George H. Evans for the mortgage with interest. In April, 1889, John Owen assigned the mortgage to the plaintiff, his brother, who commenced this action about one month thereafter. This evidence, if it had been submitted to the jury, would have authorized them to find that on the 27th of January, 1878, John Owen agreed to sell the note and mortgage in question to George H. Evans for $850, payable $100 down and the balance in the month of March following ; that on the 20th of April, 1878, Mr. Evans paid Mr. Owen on said contract the sum of $425 ; that Mr. Owen, by accepting said sum and requesting payment of the balance as soon as he " could get it," waived strict per-

formance of the contract as to time; that July 27, 1882, a further payment of $400 was made and accepted on the contract and an indefinite waiver of performance as to the remainder thereby entered into; that thereupon the circumstances required notice from Owen to Evans to pay the balance within a reasonable time, before he could refuse to accept further performance on the part of Evans, or decline to perform on his own part; that no notice was given, and on October 28, 1882, the amount unpaid on the contract, with interest, was tendered by means of a cashier's check, which was refused on grounds other than because it was not a legal tender. These facts, if found by the jury, would have required the conclusion of law that Mr. Evans had fully performed his agreement, and was entitled to the note and mortgage. After performance by Evans of the contract to purchase, Owen had no personal interest in the note or mortgage, but by operation of law held simply the naked title thereto as trustee for Evans, with no power to enforce the securities, or to do anything with them except to transfer them, pursuant to his agreement. Evans was the equitable owner thereof when Owen, who had no beneficial interest left therein, assumed to assign them to the plaintiff, who is not "the real party in interest," within the meaning of section 449 of the Code of Civil Procedure, because he had no personal interest, nor is he "a trustee of an express trust" under that section. He was not shown to be, and he does not claim to be, a *bona fide* purchaser. The assignment to the plaintiff simply recites "a good and valuable consideration," and he testified that he paid "a certain lot of stuff" for the note and mortgage; "in all $428, part of it in money and part of it in property." He did not state how much of the sum named was paid in money, nor what the property was worth. He bought the securities, nearly twenty years old, payable in Kansas, and there executed by parties who had, since the delivery thereof, continuously resided in that state, where the Statute of Limitations was shown to be "five years * * * upon any agreement, contract or promise in writing, whether

sealed or unsealed." No payment had been made upon either the note or mortgage for seventeen years, when the plaintiff bought them from his brother, and although he lived in the same village as the defendant, it did not appear that he made any inquiry of him with reference to the matter.

According to the rule, well settled in this state, however it may be elsewhere, the plaintiff, as assignee of the note and mortgage when both were past due, took those securities subject to all the equities which third persons could enforce against his assignor. Our courts recognize no distinction between equities existing in favor of the mortgagor and those existing in favor of a third person, but hold that, in the absence of an estoppel, an assignee of a mortgage takes only the interest of his assignor, and subject to any latent equity in favor of any person. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Schafer* v. *Reilly*, 50 id. 61; *Trustees Union College* v. *Wheeler*, 61 id. 88; *Greene* v. *Warnick*, 64 id. 220.) The recording act of this state has no application, because the mortgage did not cover any land situated therein, and it does not appear what protection, if any, is provided by statute in the state of Kansas for the benefit of an assignee of a mortgage. It does not even appear that any of the assignments of the mortgage in question was ever recorded.

It is our duty to assume that the jury would have found the facts in accordance with the defendant's theory, if the question of ownership had been submitted to them. (*Stone* v. *Flower*, 47 N. Y. 566; Baylies on New Trials and Appeals, 186.)

Upon that assumption we think that the plaintiff had no interest in the note or mortgage that he could have enforced against the mortgagor, and hence that he had no cause of action against the defendant upon his guaranty of performance by the mortgagor.

The order appealed from should, therefore, be affirmed, and judgment absolute rendered against the appellant, with costs.

All concur.

Order affirmed and judgment absolute in favor of defendant.