## McCONNELL *v.* MULDOON.

*N. Y. Superior Court ; trial before Referee, June,* 1893.

1. *Mortgage ; equitable priorities.*] The holder of a second mort-
gage, who by agreement with the mortgagor is entitled to
receive on account of his debt instalments which shall become
payable to such mortgagor under a prior mortgage on the same
premises at various stages of completion of the building thereon,
by waiving such right and permitting the mortgagor to use
such payments for other purposes, even in completing the build-
ing, subordinates his mortgage to the extent of the payments
so waived to a subsequent mortgage, the terms of which require
such second mortgage to be satisfied upon completion of the
building, the holder of the second mortgage having knowledge
of that fact. In such case a court of equity will apply the rule
that where a creditor has a lien upon two funds for the security
of his debt, and another party has an interest in one of them
without any right to resort to the other, such creditor will be
compelled to take his satisfaction out of the fund in which he
alone has an interest, so that both parties may, if possible, es-
cape without injury.

2. *The same.*] The rule will be applied even against an assignee in
good faith and for value of such second mortgage, as he takes
his assignment subject to all equities.

3. *The same.*] The fact that a portion of the payment which the
mortgagor is thus allowed to receive is paid by him to the
holder of the third mortgage on account of a sum due him
outside of the mortgage, will not affect his equities, where his
agreement does not make such payments applicable to his
mortage debt.

Trial of issues before a referee, in two actions brought
by Benton McConnell against William H. Muldoon for the
foreclosure of certain mortgages.

The facts are fully stated in the opinion.

*Abner C. Thomas* and *M. A. Vosburgh*, for plaintiff.

*Joseph Ullman* and *Simson Wolf*, for defendants.

McConnell *v*. Muldoon.

WILBUR LARREMORE, Referee.—These actions are brought to foreclose mortgages made by the defendant William H. Muldoon, the plaintiff also praying, as incidental to the main relief, that certain prior mortgages made by said Muldoon to one Henry M. Bendheim and covering the same premises, be adjudged cancelled, or to be liens upon said premises subordinate to the liens of plaintiff's mortgages.

On or about November 7, 1889, Muldoon, who was then seized of the premises, entered into an agreement in writing with the firm of C. B. Keogh & Company, plaintiff's assignors, whereby Keogh & Company, in consideration of the sum of $17,293, agreed to deliver to Muldoon at nine certain houses or buildings then in course of erection by him on said premises, all the sash, door, blinds and store sash, all the trimmings for doors and windows, all wainscotting, and certain other materials, " so that the material to be delivered hereunder shall embrace the standing trim of the said nine houses complete from the lath out, as required, by the plans and specifications of said buildings. The agreement further provided that such materials should be delivered as required in the completion of said buildings, and further obligated Keogh & Company to furnish at the said buildings, as the same should be required, all the plate glass called for by said plans and specifications. It was therein stipulated that said $17,293 should be paid as follows :

" $4,000 when the standing trim installment is received by him (Muldoon) from the Metropolitan Life Insurance Company under the permanent loan mortgage now placed on the four westerly of said nine houses ; $8,000 when the standing trim installment is received by him from the Metropolitan Life Insurance Company under the permanent loan mortgages to be placed on the easterly five of said nine houses ; $5,293 by delivery to the parties of the first part (plaintiff's assignors) at or before the time for the completion of said five easterly houses, the two bonds of

VOL. XXX.—23

McConnell *v*. Muldoon.

the party of the second part, each for one-half of said amount, payable one year after their date, with interest, at the rate of six per cent. per annum, and, as collateral thereto, two mortgages respectively covering each one of the two most easterly of said nine houses."

It appeared that plaintiff's assignors substantially performed the contract on their part by furnishing the materials therein called for, and that all the cash payments specified in the contract, with the exception of the sum of $300, have been paid. The mortgages sought to be foreclosed in these actions are those provided for in the clause of the agreement above quoted, which were executed by Muldoon on or about January 9, 1890.

Said mortgages to plaintiff's assignor, as finally executed, each contain the following clause: "It being intended between the parties hereto that ultimately, when the building now in course of erection upon the said premises shall be finally completed, said party of the first part (Muldoon) shall secure the satisfaction and discharge of all the mortgages to which this is subordinate, except the above described mortgage for $20,000" (the permanent loan mortgage from the Metropolitan Life Insurance Company).

Prior to the execution and delivery of the Keogh mortgages, however, and on or about December 21, 1889, Muldoon and Henry M. Bendheim, who had already had business relations with regard to these same premises and buildings, entered into an agreement, dated that day in and by which an accounting and adjustment between the parties were set forth, Bendheim agreed to loan and advance a further sum of $15,000 in installments as the buildings on said premises progressed to completion, and Muldoon agreed to give, and did execute, dated that day, certain mortgages upon the premises in question to secure Bendhiem for past and future advances. These mortgages to Bendheim are the ones which plaintiff seeks to subordinate to the lien of his mortgages.

The first ground upon which such relief is sought is an alleged tripartite agreement, made on or about February 13, 1890, between Muldoon, Bendheim and C. B. Keogh & Company, in order, as is alleged, to induce the said C. B. Keogh & Company to accept the mortgages now held by their assignee, the plaintiff, and to furnish the consideration therefor to said Muldoon. It is claimed that in such agreement Bendheim stipulated that, ultimately, when the buildings in course of erection upon the premises covered by said mortgages should be fully completed, he (Bendheim) would satisfy and discharge all the mortgages held by him to which plaintiff's mortgages were, in point of time and according to the record, subordinate.

This alleged agreement by Bendheim may be disposed of in few words. Upon the evidence, I am constrained to find that no such contract was ever made. According to the testimony of plaintiff's assignor, the instrument was in writing, but he has lost or mislaid the same, and is unable to find it, and the evidence on the subject consists of his recollection of its contents. Muldoon and Bendheim, the other parties interested deny that an instrument of the purport to which plaintiff's assignor testifies, was executed, and in this they are corroborated by the testimony of Mr. Weiss, the attorney who was alleged to have prepared and to have been present at the signing of the paper. The preponderance of evidence against the existence of such an instrument is so strong that this question of fact must be decided in favor of defendants.

The plaintiff, however, further relies upon the rule that " where a creditor has a lien upon two funds for the security of his debt, and another party has an interest in either one of those funds, without any right to resort to the other, in such a case equity will compel the creditor to take his satisfaction out of the fund upon which he alone has an interest, so that both parties may, if possible, escape without injury " (Ingalls v. Morgan, 10 N. Y. 179–186; Story's Eq. § 633).

Such contention is founded upon the fact that in the agreement between Muldoon and Bendheim, pursuant to which the Bendheim mortgages were given, there is contained the following clause :

" *Second.* That all moneys payable to said party of the first part, by or from the Metropolitan Life Insurance Company, under the first mortgages or loans by said company to said party of the said part, upon the said premises or any part thereof, shall be applied first to secure the release of so much of said premises as such first mortgages are placed upon, from time to time, from the lien of the mortgages which are liens prior to the mortgages heretofore held by the party of the second part, this day canceled, and the said company shall pay any and all such moneys, remaining after expending the amounts necessary to secure such releases, as each payment is made by said company, to the said party of the second part, who shall apply the same first, to the payment and discharge of the above mentioned bond of twenty-three hundred and forty-nine 87-100 dollars, this day delivered to said party of the second part, and then towards the payment and discharge of the mortgage, this day given to the party of the second part to secure future advances by said party of second part, and then to the payment and discharge of the said five bonds, this day given, four to secure five thousand dollars and one to secure seven thousand dollars, *pro rata*, and to the end that this agreement may be fully carried into effect the said party of the first part does hereby assign and transfer to the said party of the second part any and all sums which may hereafter become payable to him under the said first mortgage loans from said company and does hereby direct that the same be paid over to said party of the second part by said company.

At or about the time of the execution of this agreement, a paper was signed by Muldoon, bearing date December 21, 1889, and delivered to the Metropolitan Life Insurance Company, in and by which said company was

notified of said agreement, so that they might " be fully informed of the right of Mr. Bendheim in the premises and pay the moneys to him as they became due, upon his receipt."

The plaintiff claims that, as under this written arrangement between Muldoon and Bendheim, the latter might have insisted upon the appropriation of all of said moneys upon his mortgages, he had a double security for his debts. and, having failed to assert his legal rights to the fund to which plaintiff's assignor had no recourse, Bendheim's mortgages must, as between himself and the plaintiff, be considered discharged or subordinated as liens, to the extent of the amount received from such permanent loan mortgages upon the same premises. The case of Ingalls *v.* Morgan, executrix (*supra*), seems to afford direct authority for this contention. In *Willard's Equity Jurisprudence* (Potter's ed. chap. 6, p. 337), the rule is stated as follows, citing Ingalls *v.* Morgan : " So where a creditor having security upon two funds, releases one of them sufficient to have paid him, and to which the other creditor could not resort, he can only have recourse to the surplus of the other fund." I see no objection to the application of these principles in the fact that the double security consisted of mortgages on the property and an assignment of moneys to be received from prior mortgages, and plaintiff's contention must be allowed, unless the facts show that such course would be inequitable under the peculiar circumstances of the present case (*Story's Equity Juris.* § 633).

It is claimed, however, on behalf of Bendheim that shortly after the making of the agreement last referred to, and the delivery of such notification to the insurance company, and before the execution and delivery of the mortgages to plaintiff's assignors, such arrangement in writing for the payment of moneys from the permanent loan mortgages directly to Bendheim, was modified by an oral agreement. The alleged purport thereof was that, as

McConnell *v.* Muldoon.

Muldoon found that he would be unable to complete the buildings without being allowed to use a part of the moneys coming from the Metropolitan Life Insurance Company, Bendheim agreed that he would not insist upon applying all of such moneys upon his mortgages, but would allow portions thereof, from time to time, to be applied to the payment of various mechanics and material men, as necessity arose.

But, while it is quite clear that some such conversation took place during the Christmas holidays of 1889, between Muldoon and Bendheim, the evidence does not show that its result was a new contract which Muldoon could have enforced against Bendheim, or that the legal relations of the parties were in anywise changed. The successive installments paid over by the Metropolitan Life Insurance Company on the first mortgages were not entirely applied upon Bendheim's mortgages, not because of any legal obligation growing out of a prior contract of modification, but because of a waiver made by him as to each installment at the time of its receipt and which he had the legal right to refuse. Each application of such moneys by Muldoon to other debts than Bendheim's mortgages was made with the latter's express consent, and could not have been made without it.

The learned counsel for defendants contend that the application of the "double security" principle would be inequitable in the present case, because the concessions made by Bendheim from his strict legal rights enured to the general benefit of all holders of liens. They argue that if Bendheim had not allowed part of the moneys from the Metropolitan Life mortgages to be applied to current debts for materials and labor, some of which had been put in the form of mechanics' liens, the building would have been stopped, and the general security for all mortgages prevented from reaching its present value. In the first place, it is only a speculative assumption that the buildings would have been stopped without Bendheim's successive

McConnell *v.* Muldoon.

concessions. When the absolute agreement between Muldoon and Bendheim was made, that the latter should be entitled to the payments from the Metropolitan Life, it must have been contemplated that Muldoon had or would be able to procure other funds, on credit or otherwise, for the completion of the work. In any event, upon a fair reading of this agreement, its only technical and substantial effect, as far as Bendheim is concerned, is to secure for him a prompt payment of and additional security for money loaned. Unless he is to be regarded as practically a partner with Muldoon in the job, there was not the slightest reason, technical or moral, for his waiving his legal rights; and if, out of pure generosity, he made such waivers, there is no reason of which courts can take cognizance why he should now be allowed to insist on a purely legal priority, as against plaintiff's legal rights of which he (Bendheim) had both constructive and actual notice. Bendheim had actual knowledge of the clause in the Keogh mortgages in which the express intention was declared that ultimately, when the buildings were completed, Muldoon would procure the discharge of all prior mortgages except the permanent loans held by the Metropolitan Life; and this is an additional equitable reason why, as against the junior creditor, Bendheim should not have participated—unless he was willing to personally bear the consequences—in any scheme to keep the mortgages, prior to plaintiff's, alive.

It seems to me, therefore, that, as between Bendheim and plaintiff, the former's rights must be subordinated to those of plaintiff to a proportionate extent of all of Bendheim's waivers.

A point that has occasioned some doubt in the disposition of this case springs from the fact that, out of the Metropolitan Life moneys, $3,000 was paid to Keogh & Company for sums due them outside of plaintiff's mortgages, and $2,619.93 was retained by Bendheim without being credited on his mortgages, because he had indorsed notes

in that amount given to Keogh & Company. Defendants claim that at least as to such of said moneys as were actually received by Keogh & Co., they and their assignee will be required to recognize Bendheim's right to ignore his agreement with Muldoon. A certain force is given to this contention by the form of the original contract of Keogh & Company for the performance of the work. They were thereby to receive payments of $4,000 and $8,000 respectively, generally on account of the contract, " when the standing trim installment " is received by Muldoon from " the Metropolitan Life Insurance Company under the permanent loan mortgages," on the westerly four and the easterly five, respectively, of the houses in question. It is argued that this is a recognition in advance of the propriety of the application of the Metropolitan Life moneys to current expenses, and that Keogh & Company and their assignee are, therefore, estopped from raising any question as to such application, at least as far as their own receipts are concerned. But the answer is that such contract does not provide that the payments to Keogh & Company shall be made *out of* but only *when* the installments are received from the Metropolitan Life. Standing by itself the contract only approximately fixes times of payment. If there were anything in the subsequent acts of the parties, showing that their own interpretation of this contract was that the payments to Keogh & Company were to be made *out of* the Metropolitan Life moneys, such contract might be construed in the light of such acts, and the intent now contended for by defendants held to have been implied. But there is nothing in such subsequent acts calling for the interpolation into the written instrument of a provision which certainly its text does not contain. Shortly after the making of this agreement with Keogh & Company by Muldoon, his agreement with Bendheim was made, which assigned such future payments from the Metropolitan Life to Bendheim, thereby depriving Muldoon of the power to make the payments to Keogh & Company *out of* the same.

McConnell *v.* Muldoon.

As far as the evidence shows, the Keogh contract was, even as to times of payment (though not as to gross amounts to be paid), ignored by mutual consent of all parties, the Keogh payments, except the mortgages, being made at different convenient times, and in part as above shown, by notes indorsed by Bendheim. I can discover no ground for placing the construction contended for on the Keogh contract, nor for charging plaintiff, as against Bendheim even with the amounts received by Keogh & Company. It appears that at least with regard to the $3,000 payment Keogh & Company had filed a mechanic's lien, which security they would not have relinquished without getting the money then due. They would not have completed their contract and put into the buildings the value now represented by these mortgages unless the prior payments had been made. There is no equitable reason why, as against a person occupying the peculiar relation of Bendheim to the property, Keogh & Company should now be obliged to credit on a later part of the work, a payment on a former part justly due when made, and without which payment the later work would not have been done.

Certain of the Bendheim mortgages have been assigned in good faith and for value to the defendant Morris Mayer, but, under the law as now established in this State, "an assignee of a mortgage takes it subject not only to all the equities existing between the parties to the instrument, but subject to equities which third persons could enforce against the assignor" (Greene *v.* Warrick, 64 *N. Y.* 220). Under the doctrine of this case, I do not perceive how the assignee's position is any more favorable, as against plaintiff's contention, than is Bendheim's for the mortgages not assigned. See, also, Owens *v.* Evans (134 *N. Y.* 514) and cases cited.

My conclusion is that plaintiff is entitled to judgment of foreclosure and sale, the decree to contain a provision postponing the liens of the mortgages of Bendheim and Mayer, his assignee, to those of plaintiff, to the extent of

payments, to be ratably apportioned, made by the Metro-politan Life Insurance Company (less commissions, fees for searching, and similar expenses,) on the mortgages held by them on the houses which plaintiff's mortgages cover. The learned counsel for plaintiff, in his brief, offers, in the event of a favorable decision, to prepare the referee's report. I suggest that such report be drawn in accordance with the views above expressed, and served on the other side, and settled on notice.