(21 App. Div. 556.)

## CULMER v. AMERICAN GROCERY CO.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

1. LIFE INSURANCE—ASSIGNMENT OF POLICY—RIGHTS OF ASSIGNEE.

One who takes an assignment of a policy of life insurance from a prior assignee thereof takes only the interest of his assignor, and subject to any latent equity in favor of third persons.

2. SAME—EQUITIES OF THIRD PERSON.

The principle that a third party claiming an equitable interest in a policy of life insurance may be estopped from asserting the same as against an

assignee of one whom he has clothed with the muniments of title and indicia of ownership, has no application where the third party retains the policy itself in his own hands, and where the consideration for the transfer to the assignee was a mere antecedent indebtedness.

Appeal from special term.

Action by James W. Culmer against the American Grocery Company. From a judgment, defendant appeals. Reversed.

The action was brought to recover the sum of $20,000, due upon a certificate of membership or policy of insurance issued by the Mutual Reserve Fund Life Association upon the life of one Joseph S. Johnson. On the 3d of September, 1886, Johnson assigned and transferred the policy to H. K. Thurber, and the policy and written assignment were placed in the possession of the Thurber-Whyland Company. Afterwards the policy and assignment, together with unpaid notes of Johnson aggregating $66,000, were delivered by the receivers of the corporation of Thurber-Whyland Company to the American Grocery Company, the defendant, in whose possession they remained until they were delivered to F. B. Thurber. The conditions under which the policy and assignment were held by F. B. Thurber are shown by a letter written by him to one Clayton, who was connected with the defendant, reading as follows:

"New York, Oct. 26th, 1894.

"Mr. J. S. Clayton, No. 116, Reade St., City—Friend Clayton: J. S. Johnson took out a policy of $20,000 in the Mutual Reserve Fund Life Association, and assigned it to H. K. Thurber with the understanding that, after H. K. Thurber's claim against him was satisfied, any balance, in the event of Johnson's death, would go to liquidate any balance which might be due Thurber, Whyland & Co. Johnson has now got a friend to take H. K. Thurber's place, and pay the banks which hold his notes with H. K. Thurber's indorsement, which now amount to $2,500. In looking up the matter, I find that the assignment of the whole policy was to H. K. Thurber, however; yet he could only benefit to the extent of his interest. In substituting Johnson's friend for H. K. Thurber, I am going to try and get Johnson to specify that any sum which might become payable on the policy in the event of his death over and above the $2,500 due his friend who takes H. K. Thurber's place be payable to the American Grocery Company, as successor to Thurber-Whyland Co. Of course the value of the policy depends upon Johnson keeping up the payments, which he has done thus far."

Clayton's answer thereto was as follows:

"October 27th, 1894.

"Mr. F. B. Thurber—My Dear Sir: Yours of the 26th received. I had a talk with Mr. Marsalis in reference to the Johnson matter, and he says he had a talk with you yesterday, and it was understood that you would look after the matter, and you will see, when Mr. H. K. Thurber makes transfer to Mr. Johnson's friend, that it be stipulated in the transfer that he transfers only $2,500 interest in the policy; this amount to be the interest of Mr. Johnson's friend; the balance over and above this amount to belong to the American Grocery Company. We will depend on you to see that this matter is fixed in this way, and will be pleased to have you advise us as the matter progresses to a completion of the transfer in the manner above described.

"[Signed] J. S. Clayton."

By the testimony of F. B. Thurber it appears that an arrangement was made between Johnson, H. K. Thurber, and F. B. Thurber that the policy and the assignment, which was in the name of H. K. Thurber, should be held as security for $2,500 liability incurred by F. B. Thurber as indorser on one of Johnson's notes, and that the policy for the remainder of its value should be retained as security for the debt due the Thurber-Whyland Company, which, amounting to $66,000, and represented by notes, was subsequently transferred to the defendant. The policy itself remained in the possession of the American Grocery Company until the 4th of February, 1895, when it was delivered to F. B. Thurber upon the agreement as shown by the above letters. Prior to the year 1894, the plaintiff had been liable as indorser on the paper of the said Johnson,

and in the month of July, 1894, had paid a note of Johnson's for $2,500, upon which he was indorser, and in September, 1894, another note of $2,500, upon which also he was indorser.   On December 10, 1894, Johnson executed an assignment of the policy to the plaintiff.   On December 17, 1894, F. B. Thurber, as attorney in fact for H. K. Thurber, delivered to the Mutual Reserve Fund Life Association the assignment of said policy; and on the same day the association canceled the assignment to Thurber, and consented to the assignment of Johnson to the plaintiff, and the plaintiff paid $2,500 to or for the benefit of H. K. Thurber, which sum represented the interest Thurber had in the policy. On January 1, 1895, Johnson gave to the plaintiff a note, dated on that day, for £6,056 10s., payable 12 months after date, in which note it was recited that the collateral left with the plaintiff as security for said amount was the policy, together with some common and preferred stock of the J. S. Johnson Company.   At the time of the making and delivery of this note, as shown by the dates, the policy was still in the defendant's possession.   Johnson died on January 19, 1896.   The defendant claimed the amount of the policy, less the $2,500 and interest, and the plaintiff claimed the entire proceeds of the policy.   The amount of the policy having been paid into court, it was in this action left to be determined to whom such amount belonged.   The court at special term decided in favor of the plaintiff, awarding him the full amount; and the exception taken to such decision and certain exceptions to rulings upon evidence present the questions on this appeal.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Joseph H. Choate, for appellant.

Robert W. Todd, for respondent.

O'BRIEN, J.    At the time the policy was taken out, the arrangement was that Thurber was to act as trustee for the corporation, and pay to the latter the proceeds of the policy, after his own debt had been paid.    Under this arrangement the policy itself was delivered to the corporation, Thurber holding the legal title as collateral security for the payment of the amount due by Johnson to himself, and as trustee for the corporation that succeeded to the interest of Thurber, Whyland & Co. in the policy.    Johnson had parted with the policy and all interest therein.    The agreement thus made determined the rights of the parties, which thereby became fixed. Thereafter Johnson and Thurber, by agreement between themselves, without the consent of the corporation, could not devest it of its right to the proceeds of the policy.    If, therefore, we regard the canceling of the assignment to Thurber as an assignment by Thurber to Johnson, and Johnson's assignment to the plaintiff as a transfer of the legal title by Thurber or Johnson to the plaintiff, unless the corporation in some way assented to such new arrangement, or is estopped from insisting upon its right to the proceeds of the policy, the transaction between Thurber and the plaintiff was clearly ineffectual to devest the corporation of its interest in the policy.    Although the conditions under which H. K. Thurber took the legal title to the policy and assignment were not in writing, there can be no doubt that legally the Thurber-Whyland Company obtained all rights to the policy over and above the payment to H. K. Thurber of the $2,500, and that these rights accrued prior in point of time to the surrender of the assignment by F. B. Thurber, as attorney for H. K. Thurber, to the company, and the reassignment by the latter to the plaintiff.    The plaintiff, having, as consideration for the assign-

ment, paid to Thurber the $2,500 and interest, and a premium due on the policy, and some other expenses, at the time he took the assignment, to that extent is entitled to be reimbursed; but it is as to the right to the balance of the policy that the whole controversy turns.

In 15 Am. & Eng. Enc. Law, p. 861, the rule prevailing in this state is given as follows:

"The rule is not simply that the assignee takes subject to the equities between the original parties, but that the purchaser of a chose in action must always abide the case of the person from whom he buys. The true test is to inquire, what can the mortgagee do by way of enforcement of it against the property mortgaged? What he can do, the assignee can do, and no more. The reason of the rule is that the holder of a chose in action cannot alienate anything but the beneficial interest which he possesses. It is a question of power or capacity to transfer to another, and that capacity is to be exactly measured by the rights of the assignor. In that state [New York], therefore, it is well settled that the assignee of a mortgage is no less bound by equities existing between the mortgagee and third persons than by those existing against the mortgagee in favor of the mortgagor."

The general rule is that the assignee of a chose in action takes only the interest of his assignor, and while many of the cases from which the rule as stated above has been deduced relate to mortgages, the principle applicable to a policy of insurance would be in no respect different. In Owen v. Evans, 134 N. Y. 519, 31 N. E. 1000, that rule is thus stated:

"Our courts recognize no distinction between equities existing in favor of the mortgagor and those in favor of a third person, but hold that, in the absence of an estoppel, an assignee of a mortgage takes only the interest of his assignor, and subject to any latent equity in favor of any person."

This is a reaffirmation of what was said in Schafer v. Reilly, 50 N. Y. 61, that:

"One who takes an assignment of a mortgage takes it subject not only to any latent equities that exist in favor of the mortgagor, but also subject to the like equities in favor of third persons."

Judge Allen, in this case, says:

"It is well settled that a seller or assignor of a chattel or chose in action can give no other or better title than he himself has, and that the purchaser or assignee must be content to stand in his place and to accept his title."

The respondent thinks that such rule has no application to this case, for the reason that here the plaintiff did not take an assignment from Thurber, but, after Thurber had surrendered and canceled the assignment held by him, Johnson made a direct assignment, with the consent of the insurance association, to the plaintiff. It is not disputed, however, that this was all part of an arrangement made between Johnson, the plaintiff, and Thurber, by which the title to the policy should be changed; so that, whether the policy were assigned by Thurber directly to the plaintiff, or by an arrangement with the latter it was surrendered to the association, and a new assignment issued, we do not think can be differentiated in principle. The application of this rule would leave the plaintiff in such a position that he could acquire, as against the defendant, no greater rights in the policy than Thurber could transfer. And unless the principle of estoppel can be invoked as against the defendant, all

that the plaintiff is entitled to is the $2,500, which was the extent of Thurber's interest in the policy.

The respondent insists, however, that, assuming the defendant had an interest in the certificate in suit, and that the plaintiff derived his title through Thurber, it further appears that the defendant had allowed the assignment of the certificate to remain on the books of the insurance association in the name of Thurber, and surrendered possession of the assignment first, and that, after the plaintiff had acquired rights, the defendant delivered over the policy also to Thurber, thus clothing him with all the muniments of title and indicia of ownership, and putting him in a condition to confer a clear and absolute title upon the plaintiff.    Therefore, the respondent claims, the defendant is estopped from asserting its right to the policy to the prejudice of the plaintiff; and we are referred to a number of cases in which the principle has been followed that, "where the owner of property confers upon another an apparent title to or power of disposition over it, he is estopped from asserting his title against an innocent third party who has dealt with the apparent owner in reference thereto, without knowledge of the claims of the true owners."    McNeil v. Bank, 46 N. Y. 325;  Crocker v. Crocker, 31 N. Y. 507;  Voorhis v. Olmstead, 66 N. Y. 113;  Weyh v. Boylan, 85 N. Y. 394.    In the latter case, in which this doctrine of an estoppel was successfully set up against a mortgagor by an assignee of a mortgage, the court, in speaking of the interest of the latter, said:

"He is protected by the same principle which a bona fide purchaser for value and without notice successfully invokes, although the title comes to him from a person in whose hands it is affected with notice, and through which one who buys a nonnegotiable chose in action is protected against the claim of the true owner, where the latter has, by his own affirmative act, conferred the apparent title and absolute ownership upon another."

It is true that here Thurber, by reason of the assignment standing in his name, was in such position that he could surrender and have canceled the same upon the books of the association, and thus, so far as it would appear to the rest of the world, destroy rights which any one would have in or to the policy.    At the time, however, that he surrendered the policy for cancellation, the policy itself was in the possession of the defendant, and remained there for some weeks after the new assignment to the plaintiff; but, if we concede the application of the principle for which the plaintiff contends, the facts necessary to establish the estoppel are not present.    By the latter statement we mean to say that there is no evidence from which the conclusion can be drawn that the plaintiff took the assignment of the policy for anything but an antecedent indebtedness, except as to the $2,500 paid for the assignment, and the premium, and some minor expenses.    Thus, with respect to the consideration referred to in the note of January 1, 1895, relating to the indorsement of three notes in the Bank of Nassau for $5,000 each, the plaintiff himself testified that they were notes that had been renewed several times prior to the assignment of the policy.    The next item in the note which the plaintiff claims as consideration is, "Cash paid in Baltimore to take up two notes, $5,000.00." In regard to this the plaintiff testifies that one was paid by him July

27, 1894, and the other September 17, 1894, and that he had been forced to take up these two notes as indorser before he received the assignment. The next item is for another note of Johnson's, on which the plaintiff was indorser; but that note, bearing his indorsement, was in the bank at the time of the assignment. Thus we see, according to the plaintiff's own testimony, that all these were past transactions. It is true that the plaintiff testified that he relied on the life insurance policy in renewing some of these notes; but it also appears that prior to the assignment to him he had to pay at least two notes in 1894; and as to Johnson's ability he testifies:

"I don't think Mr. Johnson could have paid them at that time." "I cannot say that he had means to pay those notes with at the time of the indorsement of the renewal bill." "I asked Mr. Johnson several times between the date of the payment of those notes by me and the making of this assignment to me to give me something to secure me for this money, and also for the other notes on which I was indorser."

He does say that he relied for these renewals of the obligations in question upon the security he held at that time, which included stock of the J. S. Johnson Company and the assignment of the life insurance policy, although the original policy was in the possession of the defendant, who held it at the time of the renewal, and for a month afterwards. But it cannot be concluded from the testimony that anything was advanced by the plaintiff on the faith of the assignment to him, except the $2,500 then given.

It has been said in Crocker v. Crocker, supra, that the term "purchaser" includes one who advances money or incurs responsibility upon credit of property. But we have another rule, supported by ample authority, that a pre-existing debt is not such a consideration as will support the plea of a bona fide purchaser for value; the leading case being that of Wood v. Robinson, 22 N. Y. 564, in which Judge Denio said:

"The mortgage was taken as collateral security for an antecedent debt, nothing being advanced at the time, and no security being given up." Cary v. White, 52 N. Y. 138; Weaver v. Barden, 49 N. Y. 286.

Notwithstanding, therefore, the plaintiff's own statement that he relied upon the faith of the policy in incurring the obligations, there is no evidence even of the giving up of the prior notes by him to Johnson at the time of the renewal; and thus we are thrown back upon the inference to be drawn from the only testimony appearing that the consideration supporting the claim of a bona fide assignee for value was an executed one, given long before the assignment and the renewal note to him. Upon this question of estoppel, it is true, the assignment stood in the name of Thurber absolutely, and that he had possession; but, as already pointed out, the policy itself was in the possession of the defendant, and there is nothing to show that the plaintiff at the time of the assignment made any inquiries in regard to the absence of the policy itself, he having taken the assignment without even seeing the policy, which was not received by him for over a month. It was held in Kellogg v. Smith, 26 N. Y. 18, that the assignee of a bond and mortgage, who failed to require the production of the bond, was chargeable with the prior equities, the court saying:

"The truth is, they saw fit to trust to Bedell's word that he owned and possessed the bond (with its collateral security), and upon that trust they paid him for the bond, and took a written assignment of it and of the pledge that secured it. In looking for the title to the security, they failed to look after the title to the principal; and they must abide the consequences of not taking the proper precaution of requiring the production and delivery of the bond. * * * The nonproduction of the bond and mortgage was such notice as to put the respondents on inquiry, and deprive them of the protection given by the recording acts to purchasers without notice."

Upon the evidence as it was produced at the trial, the plaintiff was only entitled to the $2,500 paid by him to H. K. Thurber, with interest, and the amount which he paid for the premium on the policy, $114.32, with interest thereon, together with $4 expended by him in furnishing proofs of death under the policy. The awarding to him, in addition, of the balance of the amount, was error, for which the judgment must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, and INGRAHAM, JJ.