BUTCHER v. WERKSMAN et al.

(District Court, E. D. New York. April 19, 1913.)

**1.** BANKRUPTCY (§ 175\*)—REAL ESTATE MORTGAGE—FAILURE TO RECORD—EFFECT.

Failure to record a second real estate mortgage, executed by a bankrupt, until his condition was such as to arouse expectation of trouble. was only relevant as showing the intention of the parties, and was corroborative of fraud in case it appeared that the mortgage was without consideration, or in fraud of the rights of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.\*]

**2.** BANKRUPTCY (§ 314\*)—REAL ESTATE MORTGAGE—FRAUD—RIGHTS OF ASSIGNEE.

Where an insolvent, in contemplation of bankruptcy, executed a second mortgage for $1,000 on certain real property to his brother-in-law, which was fraudulent and without consideration, and the mortgagee, after bankruptcy had intervened, assigned the mortgage to L. for $700, it was not provable as a claim against the bankrupt's estate, under the rule that a purchaser of a mortgage takes only the rights of his assignor, and is not an innocent purchaser for value.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.\*]

In Bankruptcy. Action by Edward Butcher, Jr., as trustee in bankruptcy of one Morris Werksman, against Abel Werksman and others, to set aside a second mortgage on certain property of the bankrupt for fraud. Granted.

Morton Stein, of New York City, for complainant.
Alexander Wolf, of New York City, for defendants.

CHATFIELD, District Judge. Upon the 5th of January, 1910, one Morris Werksman gave a mortgage to his brother-in-law to secure the sum of $1,000, and subsequent to a first mortgage of $2,000, upon his property at No. 33 Reid avenue, Brooklyn. This mortgage was not recorded until the 20th of April, 1910, and upon the 25th of May, 1910, a petition in bankruptcy was filed against the said Morris Werksman, resulting in adjudication upon the 9th of June, 1910. The trustee of the estate has brought the present action to have this

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mortgage declared null and void against the bankrupt, the mortgagee, and an assignee, one Louis Lipschitz, of Passaic, N. J., on the ground that it was given to defraud creditors and conceal assets. The three defendants have answered, denying the allegations of fraud, and alleging that the mortgagee, Abel Werksman, transferred, upon the 1st day of October, 1910, the bond and mortgage referred to, to the defendant Lipschitz, by assignment, for the sum of $700. It appears to be undisputed that Lipschitz paid to Abel Werksman the said sum of $700 in return for this assignment. The bond had been given for the period of three years, and no default had occurred prior to the time of the transfer to Lipschitz, except as caused by the adjudication in bankruptcy.

The first point to be considered is the charge of fraud in executing and delivering the second bond and mortgage. The house in question has since been sold for $4,500. The schedules and the assets of the estate, however, show that the bankrupt was actually insolvent at the time of making this mortgage, and it is charged by the trustee that no loan actually was made to be secured thereby. It may be assumed that a bona fide loan of $1,000 as present consideration for a second mortgage, and with no elements of fraud, would be valid as against the real estate upon which the mortgage was given.

[1] The mortgage in question in this suit was not recorded until April. In the case of a chattel mortgage, this might be sufficient to substantiate a charge of invalidity; but, with respect to real estate, the failure to record a mortgage affects only priority as against persons acquiring liens before the actual date of recording. The failure, therefore, to record it until the condition of the bankrupt was such as to arouse the expectation of trouble, only goes to the matter of proof of the intentions of the parties. If it appear that the bond and mortgage were made without consideration, or in fraud of creditors' rights, then the failure to record would be corroborative of the fraudulent scheme.

[2] We must therefore consider the testimony upon the question of the bona fides of the original transaction. The court has read the testimony, but has not heard the witnesses. It appears that Abel Werksman was a partner in the Heart Jewelry Company, of which company he kept the books. During all the period in question his withdrawals from the firm were as much as he had the right to withdraw, according to his agreement with his partners, and he invested no money for the firm in this mortgage. On the contrary, although he claims that he accumulated the money by use of the firm's funds, he did not make entries thereof in the firm's books, and none of these moneys were deposited in either the firm's bank account or in any bank account for himself. His story of how he obtained these moneys is that he personally discounted notes held by the firm, and subsequently rediscounted or collected these notes for his own benefit in repayment. He kept for himself the proceeds and the profits; but he did not keep in the firm's books any account of these personal discounts, and kept no books himself, so as to show his profit transactions. He testifies that under these conditions the bankrupt noti-

fied him that he was in trouble and needed to borrow money, and that it was agreed between them that the bankrupt would have to have $1,000 in about three months; that this occurred in October, 1909, and that he therefore began to accumulate funds, which he carried in his pocket until in January he had the necessary $1,000, and that he then loaned this amount to his brother-in-law. He gives no persuasive explanation of why he accumulated the amount until he could pay it in one sum, at a time when his brother-in-law's needs were so pressing all through the period of accumulation. He differed in his testimony as to the time when he agreed to accumulate this amount—in one place fixing the date as in November or December, instead of October. He evidently knew of the doubtful financial condition of his brother-in-law, the bankrupt, at all times, even when he took the second mortgage and failed to record it.

The bankrupt did not furnish, nor did Abel Werksman produce, any records or vouchers showing the receipt by the bankrupt of the $1,000, and he deposited in his bank but $200 which he can identify from the proceeds. He testifies that he paid over $500 from the alleged loan to another brother-in-law, and that he paid over $200 to one of the petitioning creditors, named Smith. These two payments, aggregating $700, correspond to the amount which Abel Werksman, the mortgagee, obtained when he sold the mortgage to Lipschitz, and it might have been charged that the amount involved in the transaction between the two brothers-in-law, if any loan was ever made, was only $700, and that this was the amount for which a second mortgage of $1,000 was prepared as security. Such a mortgage would have been preferential, as the record thereof was within four months of adjudication. Section 60a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]). The mortgage and bond might also have been attacked for usury.

The second brother-in-law and Smith did not corroborate the testimony of the bankrupt, and the whole transaction depends upon the existence of a mortgage given for alleged cash payments under circumstances which are unworthy of belief. Therefore the trustee has not charged a preference, but has claimed that the entire transaction was void as a fraud on creditors.

The record indicates that Lipschitz paid Abel Werksman $700 on account of the mortgage in question. This payment is not disputed, and there is no testimony offered to indicate that the source from which Lipschitz secured the funds for the purchase of the mortgage was other than as he claimed; that is, that it was his own money. If so, Abel Werksman has received $700 on account of a mortgage executed in such a way as to indicate a fraudulent transaction, and has thereby transferred to an apparently innocent party, for value, security of the face value of $1,000, not as security for the sum paid by Lipschitz, but as an actual sale. This sale was consummated after the adjudication in bankruptcy, and after the title to the equity in the property was in the trustee. No affidavit of title was given by the bankrupt, nor any investigation nor search made of the title to the property, nor as to the validity of the mortgage. The bargain

offered—that is, the possibility of securing a $1,000 mortgage for $700—is claimed by the assignee to have been satisfactory to him, and in effect he took the risk of the validity of the mortgage which was assigned to him. As between him and Abel Werksman, he was a purchaser for value. But the purchaser of a mortgage takes by assignment only the rights which his assignor could convey, and is not an innocent purchaser for value, in the sense that the term is used with respect to a chattel or to a piece of negotiable paper. Schafer et al. v. Reilly, 50 N. Y. 61; Bush v. Lathrop, 22 N. Y. 535; Davis v. Bechstein, 69 N. Y. 440, 25 Am. Rep. 218; Owen v. Evans, 134 N. Y. 514, 31 N. E. 999.

But if it be claimed that the mortgagor had been estopped in any way from denying validity of the mortgage in the hands of an innocent assignee, this would not protect the purchaser as against the trustee in bankruptcy. At the time of the assignment to Lipschitz, title to the property was vested in the trustee in bankruptcy, and Abel Werksman could not then create a valid lien thereon by transfer of an invalid mortgage. The purchaser of such a mortgage, if his assignment were recorded, would be a valid holder with respect to any subsequent mortgagee—that is, in so far as the recording acts might give him the advantage over subsequent incumbrancers; but he does not thereby get any better title than that which was possessed by his assignor, and the bankruptcy proceeding was notice to him of any possible defect in title as against creditors.

Upon the testimony in the present case, the assignor, Abel Werksman, seems to have obtained nothing except a bond and mortgage, fraudulently made and intended to defraud the creditors of the bankrupt. By this, at a time when the insolvency of the bankrupt was known both to himself and to the mortgagee, concealment of the bankrupt's property would be effected by the giving of a mortgage, unless such enrichment of the estate as to furnish a valid present consideration were shown. This has not been done, and the trustee should have a decree setting aside, as between the bankrupt estate and Abel Werksman, or his assignee, the lien and obligation of the bond and mortgage. Whether or not the transfer of the bond and mortgage to Lipschitz gave the latter a cause of action against Abel Werksman is something with which we have nothing to do; but the admitted receipt of $700 by Abel Werksman renders him liable to protect the estate from any claim therefor by Lipschitz, and leaves the transaction dependent solely upon whether the making of the original bond and mortgage was fraudulent.

As the court concludes it so to be, the trustee has the right to have it declared null and void, and not an obligation against the bankrupt estate. A decree may be entered accordingly.