(73 App. Div. 423.)

### COPELAND v. BROWN et al.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

PARTNERSHIP BOOKS—PARTNER'S RIGHT OF INSPECTION—INSPECTION FOR PURPOSE OTHER THAN ACCOUNTING—DEFENSE IN ACTION BY THIRD PARTY.

 Defendant and P. and Q. constituted the firm of P., B. & Q., which firm was interested in the firm of B., H. & Co., and defendant and Q. assigned defendant's interest in the latter firm to P., who assigned it to plaintiff as security for a personal debt. Plaintiff sued to recover the value of the interest so assigned to him, whereupon defendant set up the defense that the assignment to P. was made when P. was indebted to the firm of B., H. & Co., and on condition that P. would dispose of it, and turn over the proceeds to defendant. Held that, the existence of P.'s indebtedness to the firm of B., H. & Co. being a necessary step to be established as a basis for the claim that the assignment to him

was conditional, and that defendant's equity in the fund in suit was thus superior to plaintiff's, defendant was entitled to an inspection of the books of P., B. & Q. for the purpose of disclosing P.'s indebtedness as alleged, regardless of any question of the necessity of, or of defendant's right to, an accounting with his copartners.

Appeal from special term.

Action by Henry C. Copeland against William H. Brown, as receiver, etc., impleaded with Clinton Beckwith. From an order vacating an order for the inspection of the firm books of a partnership of which defendant Beckwith was a member, he appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

M. J. McKinnie, for appellant.
L. Laflin Kellogg, for respondent.

HATCH, J. It appears from the averments of the complaint that the defendants Peterson, Beckwith, and Quackenbush were copartners in several firms prior to the year 1890, under various names. The defendant Beckwith represented the interests of himself and partners in the firm of Brown, Howard & Co., which firm was one of the contractors for the building of the New Croton aqueduct. This last-named firm was dissolved, and the assets were distributed under stipulation between the parties made on the 28th day of June, 1900. Of Beckwith's share there were retained by the defendant Brown, as receiver, $15,216.71, pursuant to a written stipulation between the plaintiff and Beckwith to await the determination as to the ownership thereof between the defendants Beckwith and Peterson and the plaintiff, Copeland. After such stipulation the plaintiff brought this action, claiming this sum of money by virtue of an assignment made to him by Peterson as collateral security for a loan. Some seven years prior thereto, Beckwith and Quackenbush had made an assignment to Peterson of one-third of the interest represented by Beckwith in the firm of Brown, Howard & Co. In his answer to the complaint, defendant Beckwith avers that this assignment to Peterson was made at a time when the latter was heavily indebted to the firm of Brown, Howard & Co., and was so made on the express understanding and agreement by Peterson that he would dispose of the interest so assigned for cash, and turn over the proceeds to Beckwith; that in fraud of the rights of Beckwith the defendant Peterson failed to dispose of such interest so assigned for cash, but, on the contrary, retained the same in his possession, and more than seven years afterwards assigned it to the plaintiff as security for personal loans theretofore made to him by the Riverside Bank. The controversy, therefore, which this case presents, relates to the priority of right in and to this fund by virtue of Peterson's assignment to the plaintiff, and the violation of the agreement by which the proceeds of the assignment to Peterson were to be paid to the defendant Beckwith pursuant to the agreement when the assignment was made. Such is the issue presented by the pleadings in the action.

The defendant Beckwith seeks an inspection of the books of the firm of Peterson, Quackenbush, and the defendant,. and he avers in his petition that the books of such firm were kept in the custody and control of the defendant Peterson; that Beckwith has not, and never has had, the possession of these books; and that Peterson refuses to let Beckwith see them. It is further averred in the petition, in substance and effect, that an inspection of these books will disclose the indebtedness of the defendant Peterson to the firm of Brown, Howard & Co. at the time when the assignment was made by the latter to Peterson, and that an inspection of such books is essential and necessary to the defendant Beckwith in order that he may properly prepare for the trial of the action. It is evident from the averments of the petition and the issues raised by the pleadings that the defendant Beckwith can only succeed in defeating plaintiff's rights to the money by showing the existence of an indebtedness at the time when the firm made the assignment to Peterson, as one of the steps necessary to be established in order to furnish a basis for the assertion of the claim that the assignment made to Peterson was a conditional assignment, and that when the moneys were realized therefrom by virtue of the conditions Beckwith became entitled to have and receive the money. It seems to be well settled that, even in the case of a purchaser for value of a chose in action, he takes it subject to all equities existing between the parties, and also to latent equities existing in favor of third persons; and, if such third person has a superior equity, it is not essential that notice of the same should be given to the purchaser in order to protect the rights of such third party. Central Trust Co. of New York v. West India Imp. Co., 169 N. Y. 314, 62 N. E. 387; Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 58 Am. Rep. 490. In the present case the plaintiff does not stand in the position of a purchaser for value, as he took the assignment as security for an antecedent debt. It is, therefore, evident that if Beckwith prove the conditional character of the assignment of the firm to Peterson it is quite possible that he may be able to establish a superior equity over the plaintiff to the fund in question. It seems clear that one of the steps in substantiation of this claim is the establishment of the indebtedness of Peterson at the time when the assignment was made to him. It is apparent from the averments of the petition that the books are essential in order to show such fact. Beckwith has as much right to the possession of the books as does Peterson. He was a partner in the firm, and it has always been the well-recognized rule that the rights of partners to have an inspection of the books of the firm is equal, and one partner may not lawfully deny the right of such inspection, or deprive the other of access thereto. Kelly v. Eckford, 5 Paige, 548; Stebbins v. Harmon, 17 Hun, 445; Allen v. Stead (Sup.) 11 N. Y. Supp. 536. As it is clear that an inspection of the books is necessary for Beckwith to prepare for trial, he has the legal right to such opportunity, and may not be deprived of it by the refusal of a copartner, having the manual custody of the books, to allow it.

The learned court, in deciding this motion, seems to have based

his decision upon the ground that the books were only essential to the defendant Beckwith for an accounting, and that, as an accounting would not be taken until the right of the defendant thereto was established, he was not entitled to a present inspection of the books, but might become so entitled after the establishment of his claim. We think this view ignores the real issues between the parties. That issue is, who has priority of right and the superior equity to the fund in question? and such determination must be based upon a consideration of the circumstances and agreement of the parties when the respective assignments were made. One very pertinent element in such consideration is the existence, if it be a fact, of the indebtedness of Peterson to the firm when he received the assignment. Such condition, it is quite likely, can either be proved or disproved by the books. Indeed, it would seem as if they were absolutely essential upon such issue; for, if the indebtedness in fact existed, the books will disclose it. This is not for the purpose of an accounting between the parties, but is the presentation of affirmative proof bearing upon the subject-matter, presented by the issue raised by the pleadings. An inspection of the books was therefore properly ordered.

It is claimed by the respondent that the defendant Beckwith has been guilty of negligence. The affidavits, however, sufficiently explain the difficulty of procuring service upon Peterson, who lived at Lockport, in the western end of the state, and of the inability of the petitioner to make personal service upon him of the demand for an inspection of the books. The proof is sufficiently explicit and satisfactory to excuse any delay in making the motion.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion to vacate be denied, with $10 costs. All concur.

---

(73 App. Div. 137.)

### MANZELLA v. RYAN.

(Supreme Court, Appellate Division, Fourth Department.   June 6, 1902.)

CONTEMPTS—CONDUCT OF A WITNESS.

Code Civ. Proc. § 14, subd. 5, authorizing a court of record to punish a witness for contempt in refusing or neglecting to answer as a witness, emphasized by section 2281, providing for a final order directing the punishment of the delinquent, does not authorize the committal of a witness for contempt for evasive and contumacious conduct.

Appeal from special term, Erie county.

Action by Carmele Manzella against Matthew Ryan. From an order adjudging the defendant guilty of contempt for conduct as a witness in proceedings supplemental to execution, he appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

W. J. Creamer, for appellant.

Herman J. Westwood, for respondent.