CENTRAL TRUST COMPANY OF NEW YORK, as Trustee, Appellant, *v.* THE WEST INDIA IMPROVEMENT COMPANY et al., Respondents.

1. MORTGAGE — AFTER-ACQUIRED PROPERTY.  A mortgage executed by a construction company conveying all property or rights of property acquired or to be acquired under a concession from a foreign government giving it the right to build a railroad and providing for the subsequent incorporation of a railroad company and for the issue of its securities, part of which were to be delivered to the construction company in payment for the work as it progressed, covers the securities to be thereafter issued and delivered to the mortgagor.

2. EQUITABLE ASSIGNMENT.  The right of the mortgagor to receive the securities, although they were not in existence at the time of the execution of the mortgage, is in equity subject to assignment to the same extent as though they had been issued, the work completed and the mortgagor had become entitled to receive them, the mortgage operating by way of a present contract to give a lien which, as between the parties, took effect and attached to the securities as soon as they came into the hands of the mortgagor.

3. PRIORITY OF MORTGAGE OF PROPERTY TO BE ACQUIRED OVER SUBSEQUENT CONVEYANCE OF THE SAME PROPERTY TO GRANTEE WITHOUT NOTICE.  Where certain of the bonds when issued were deposited with the government authorities as security to be returned to the mortgagor upon the satisfactory completion of the work, the lien of the mortgage upon them is superior to that subsequently acquired by a trustee without notice of the mortgage, under a deed purporting to transfer all the mortgagor's right, title and interest in such bonds, which it agreed to deposit with the trustee when so returned, which deed was executed by the mortgagor to secure an issue of promissory notes certified by the trustee as secured thereby and which notes were discounted by parties with knowledge of its provisions before the delivery of the bonds, because the lien of the mortgage was prior in time and also because the right of the trustee to the bonds was subject not only to the equities between the parties to the deed but also to the equity in favor of the mortgagee, of which it was not necessary that the trustee should receive notice.

4. WHEN TITLE OF MORTGAGEE NOT DEFEATED BY SUBSEQUENT DELIVERY OF THE PROPERTY TO GRANTEE.  The fact that the bonds were subsequently actually delivered to the trustee does not render the lien of the mortgage inferior to that of the trustee upon the ground that thereby the legal estate was acquired, because the instant the mortgagor received the bonds in negotiable form from the government authorities it held them in trust for the mortgagee and the latter acquired not only the equitable but the legal title thereto which could not be

divested or defeated by the mortgagor's wrongful act in delivering the bonds, and its title was valid as against every one except subsequent purchasers in good faith and for value, which the trustee and the noteholders were not, the money being advanced, not on the faith of the bonds, but only upon the promise of the mortgagor to deliver them to the trustee when received.

5. INJUNCTION. Assuming that the noteholders were purchasers in good faith and for value, and as such were entitled to a lien upon the bonds superior to that of the mortgagee, in an action by the latter against them, the trustee and the mortgagor to establish its lien, the dismissal of the complaint against the mortgagor is erroneous where it appears that an unissued note is in its possession which it should be restrained from negotiating and thus further impairing the plaintiff's security.

*Central Trust Co.* v. *West India Imp. Co.*, 48 App. Div. 147, reversed.

(Argued November 19, 1901; decided December 31, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 29, 1900, affirming a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William D. Guthrie* and *Adrian H. Joline* for appellant. The plaintiff was entitled to judgment as against the West India Improvement Company and against the holders of the Manhattan trust notes who were not shown to be *bona fide* holders for value. (*Pray* v. *Hegeman,* 98 N. Y. 351; *Goebel* v. *Iffla,* 111 N. Y. 170; *Lorillard* v. *Clyde,* 122 N. Y. 41; *Reich* v. *Cochran,* 151 N. Y. 122; *Barber* v. *Kendall,* 158 N. Y. 401; *Stevens* v. *Brennan,* 79 N. Y. 254; *D. S. M. Co.* v. *Best,* 105 N. Y. 59; *Seymour* v. *McKinstry,* 106 N. Y. 230; *Noel* v. *Murray,* 13 N. Y. 167; *Hull* v. *Stevens,* 116 N. Y. 201.) The defendants McDonald & Co. and most of those claiming under them were not *bona fide* holders for value without notice. (*Patman* v. *Harland,* L. R. [17 Ch. Div.] 353; *Williamson* v. *Brown,* 15 N. Y. 354; *Baker* v. *Bliss,* 39 N. Y. 70; *Reed* v. *Gannon,* 50 N. Y. 345; *Parker* v. *Conner,* 93 N. Y. 118; *Wheatland* v. *Pryor,* 133 N. Y. 97; *Holden* v. *N. Y. & E. Bank,* 72 N. Y. 286; *Bennett* v.

*Buchan*, 76 N. Y. 386; *Constant* v. *Univ. of Rochester*, 111 N. Y. 604; *P. Ins. Co.* v. *Church*, 81 N. Y. 218.) The assignment to the plaintiff was not a chattel mortgage; but it constituted a present assignment or conveyance of rights and choses in action to which the improvement company would become entitled on the performance of an existing contract. As the stock and second mortgage bonds were clearly non-negotiable choses in action at the time they came into the possession of the improvement company, as well as at the time they were pledged to the Manhattan Trust Company, such an assignment must prevail as against subsequent assignees or pledgees. (*Niles* v. *Mathusa*, 162 N. Y. 546; *Field* v. *Mayor, etc.*, 6 N. Y. 179; *Fairbanks* v. *Sargent*, 117 N. Y. 320; *Chester* v. *Jumel*, 125 N. Y. 237; *Kimball* v. *F. & M. Nat. Bank*, 138 N. Y. 500; *York* v. *Conde*, 147 N. Y. 486; *Kribbs* v. *Alford*, 120 N. Y. 519, 524; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191, 211; *C. T. Co.* v. *Kneeland*, 138 U. S. 414, 419; *Edgerly* v. *Bush*, 81 N. Y. 199.) The Manhattan Trust Company's noteholders did not part with any value on the faith of negotiable instruments and are not, therefore, within the exception protecting *bona fide* purchasers for value of such an instrument. (*G. Nat. Bank* v. *Bingham*, 118 N. Y. 349; *L. Nat. Bank* v. *Taylor*, 100 Mass. 18; *Gilbert* v. *Sharp*, 2 Lans. 412; *Clark* v. *Whitaker*, 50 N. H. 474; *Haskell* v. *Mitchell*, 53 Me. 468; *Savage* v. *King*, 17 Me. 301; *Fairbanks* v. *Sargent*, 104 N. Y. 108; *Judson* v. *Corcoran*, 17 How. [U. S.] 611; *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *People ex rel.* v. *Van Buren*, 136 N. Y. 252.)

*Willard Parker Butler* and *George W. Wickersham* for Manhattan Trust Company et al., respondents. The Appellate Division correctly sustained the referee in holding that the mortgage to the Central Trust Company did not operate to pass the legal title to the bonds and stocks to it, as they came into the hands of the West India Improvement Company. The property was of such a nature that title could

only pass according to well-established legal formalities which were never complied with. (*R. D. Co.* v. *Rasey*, 142 N. Y. 570; *C. T. Co.* v. *Kneeland*, 138 U. S. 414; *G. C. C. Co.* v. *F. L. & T. Co.*, 24 U. S. App. 38; *Nanney* v. *Morgan*, L. R. [37 Ch. Div.] 346; *Powell* v. *L. & P. Bank*, L. R. [16 App. Cas.] 482; *Fox* v. *Martin*, 64 L. J. Ch. 473; *McNeil* v. *T. Nat. Bank*, 46 N. Y. 325; *Grymes* v. *Hone*, 49 N. Y. 17; *Isham* v. *Buckingham*, 49 N. Y. 216; *Robinson* v. *Nat. Bank of New Berne*, 95 N. Y. 637.) The Manhattan Trust Company and all its beneficiaries in this trust are purchasers for value. (*Mayer* v. *Heidelbach*, 123 N. Y. 332; *Bank* v. *Gilliland*, 23 Wend. 311; *Bank* v. *Barton*, 24 Wend. 115; *Youngs* v. *Lee*, 12 N. Y. 551; *Brown* v. *Leavitt*, 31 N. Y. 113; *Hubbard* v. *Gurnee*, 64 N. Y. 457; *McNulty* v. *Hurd*, 86 N. Y. 547; *Pratt* v. *Coman*, 37 N. Y. 443; *Bank* v. *Wixson*, 42 N. Y. 438; *Durkee* v. *Bank*, 36 Hun, 565.) None of the parties defendant had any knowledge or notice of the existence of the so-called debenture mortgage, or of its contents, at the time of the execution and delivery of the agreement between the West India Improvement Company and the Manhattan Trust Company on September 3, 1896, or of the acceptance of the notes secured by it. (Mecham on Agency, 718; *Miller* v. *I. C. R. R. Co.*, 24 Barb. 312; *Bank of U. S.* v. *Davis*, 2 Hill, 452; *Constant* v. *Univ. of Rochester*, 111 N. Y. 604; *Slattery* v. *Schwannecke*, 118 N. Y. 543; *Denton* v. *O. C. Bank*, 150 N. Y. 126; *The Distilled Spirits*, 11 Wall. 366; *Brown* v. *C. I. Co.*, 18 C. C. A. 444; 72 Fed. Rep. 103; *Hover* v. *Wise*, 91 U. S. 308; *Hood* v. *Fahnstock*, 8 Watts, 489; *Hart* v. *F. & M. Bank*, 33 Vt. 252.) The Appellate Division committed no error in affirming the decision of the referee that the defendant trust company and the note creditors, having obtained their equity in the securities for value and without notice, and having acquired the outstanding legal title, held that title discharged from the prior equity of the plaintiff. (*Williams* v. *Ingersoll*, 89 N. Y. 508; *Fairbanks* v. *Sargent*, 104 N. Y. 108; 117 N. Y. 320; *Moore* v. *Met.*

*Nat. Bank*, 55 N. Y. 41; *Ashwin* v. *Burton*, 32 L. J. Ch. 196; *Combes* v. *Chandler*, 83 Ohio St. 178; *Eversole* v. *Maull*, 50 Md. 95; *Ambrose* v. *Evans*, 66 Cal. 74; *Arnold* v. *Johnson*, 66 Cal. 402; *Otis* v. *Gardner*, 105 Ill. 436; *Plummer* v. *People's Bank*, 65 Iowa, 405.)·

*George Hoadly* and *Eugene Treadwell* for William Kenefick, respondent. The title of the Central Trust Company was at most only equitable. (*G. R. R. Co.* v. *Cowdrey*, 11 Wall. 459; *Gilman* v. *I. & M. Tel. Co.*, 91 U. S. 603; *A. B. Co.* v. *Heidelbach*, 94 U. S. 798; *N. Y. S. Co.* v. *S. G. & E. L. Co.*, 159 N. Y. 137.) The title of the Manhattan Trust Company was both equitable and legal. (*Cary* v. *White*, 52 N. Y. 138; *Acer* v. *Westcott*, 46 N. Y. 384; *Ware* v. *Egmont*, 4 De G., M. & ·G. 460; *Parker* v. *Connor*, 93 N. Y. 118; *Constant* v. *Univ. of Rochester*, 111 N. Y. 604; *Slattery* v. *Schwannecke*, 118 N. Y. 543; *Denton* v. *O. C. Nat. Bank*, 150 N. Y. 136.) The equity of the Central Trust Company is subordinate to the combined equity and legal title of the Manhattan Trust Company and of Kenefick and other note holders. (*Fortunato* v. *Patten*, 147 N. Y. 283; *Fairbanks* v. *Sargent*, 104 N. Y. 108; *Williams* v. *Ingersoll*, 89 N. Y. 508.)

CULLEN, J. In March, 1889, the colony of Jamaica was the owner of about 65 miles of railway in that island, which it was desirous of extending by the construction of 125 miles of additional road. It sought to have this extension made by private capital, and for this purpose entered into an agreement with Frederick Wesson, the material parts of which may be briefly stated as follows: A corporation was to be formed by Wesson and his associates under the laws of the colony to be known as the Jamaica Railway Company. The existing railroad was to be conveyed to that company for £100,000 in cash and £700,000 in second mortgage bonds out of a total issue of £800,000. The company was authorized to issue first mortgage bonds to the amount of £1,500,000. The agree-

ment required Wesson and his associates to proceed with the construction of the road at a prescribed speed and to complete the same by a specified time. It provided that the first mortgage bonds should be issued only as the work progressed, and it secured the application of the proceeds of the bonds to the prosecution of the work by the deposit of the funds so as to be subject to the control of the colony. The details of these provisions it is unnecessary to recite further than to say that the remaining £100,000 in second mortgage bonds were to be deposited immediately with the colonial government as security for the carrying out of the agreement, which were to be returned to Wesson and his associates on the completion of the railroad, and that £30,000 of the first mortgage bonds were to be retained for the further period of one year from such completion to defray the cost of repairs or replacement that might become necessary during that time. The agreement gave Wesson and his associate promoters a land grant for every completed section of the road. This agreement was confirmed by an act of the legislative council of the colony, which authorized the promoters to form a corporation, a foreign one, if desired, for the purpose of carrying out the agreement. In accordance with this privilege the defendant, the West India Improvement Company, was organized as a corporation under the laws of this state, and in August, 1889, Wesson assigned to said company all the grants, concessions, powers and privileges which he had under said agreement and law. To raise money for the cash payment of £100,000 required on the transfer of the existing railroad to the Jamaica Railway Company and to obtain funds to prosecute the construction of the new road, the West India Company executed and delivered to the plaintiff as trustee a mortgage and deed of trust by which it conveyed and transferred to said trustee the grant and concession with all the rights and privileges thereunder which had been transferred to it by Wesson, and all lands owned or thereafter to be acquired and owned under said concession, the common capital stock of the Jamaica Railway Company to the amount of £1,000,000, " and

also all other property, or rights of property, real, personal or mixed, now held and acquired, or which the party of the first part may hereafter, hold, acquire or be entitled to in, for, upon by reason of or in connection with the purchase, construction, maintenance or operation of said railway, or under or in pursuance of the provisions of said act, or any of the grants, concessions, rights, powers, privileges, franchises or liberties thereby conferred." The mortgage was made to secure the payment of one thousand negotiable bonds for the sum of $1,000 each, payable in ten years with interest at four per cent per annum. The West India Improvement Company disposed of $921,000 par value of these bonds, receiving therefor $920,000. This mortgage was filed or recorded in Jamaica. The railway company was organized, the existing railroad transferred to it, £100,000 in cash and £700,000 in second mortgage bonds were paid to the colony in consideration of the transfer, and the remaining £100,000 of the second mortgage bonds were delivered to it as security for the performance of Wesson's agreement. The West India company entered upon the construction of the new railroad, using what we may term the current issue of first mortgage bonds provided for in the agreement to raise money to defray the expense of the work. In September, 1896, the railroad was substantially completed, but the improvement company was in financial straits. It owed J. P. McDonald & Company, a firm of contractors, for work done on the railroad, about the sum of $700,000 exclusive of a further claim of $100,000 which was in dispute. Besides this it had other outstanding indebtedness. It had disposed of all the first mortgage bonds except £30,000 thereof reserved by the colonial authorities as security for repairs on the road. It had its interest in the £100,000 of second mortgage bonds, also held by the colonial authorities, but which it was entitled to receive as soon as the road was completed and turned over to the railway company. It owned the whole capital stock of the railway company, nominally £1,060,000, which stood in its name on the books of the railway and certificates of which

were then in its possession. The firm of J. P. McDonald & Company was also in financial difficulty. In the prosecution of its contract with the improvement company it had incurred debts for large sums which were then outstanding. To raise funds with which to satisfy the claims of McDonald & Company and its other creditors, the West India Improvement Company, on the 3d of September, 1896, executed an assignment or trust deed to the defendant, the Manhattan Trust Company, to secure an issue of promissory notes not to exceed in amount one million of dollars. By this deed it transferred to the trustee: 1. 53,000 shares of the par value of £20 each of the railroad company, the certificates for which it deposited with said trustee. 2. The right, title and interest of the improvement company in £30,000 first mortgage bonds held by the government of the island of Jamaica, which bonds it agreed to deposit with the trustee when released. 3. The right, title and interest of the improvement company in the £100,000 of the second mortgage bonds of the railway company, similarly held by the government of Jamaica, which also it agreed to deposit with the trustee when released by the colonial government. The notes issued by the improvement company were certified by the trustee to be secured by the transfer or trust deed. The trustee's certificate stated what the transferred property was, to wit: The railway company's stock, the certificates of which were deposited with the trustee, and the interest of the improvement company in the specified first mortgage and second mortgage bonds which were to be deposited with the trustee when received by the improvement company. Under this trust deed the trustee certified to a series of notes made by the improvement company aggregating one million of dollars. They were all negotiated by the improvement company with the exception of one for the sum of $237,399.02, which the referee found was still held by the maker. Notes amounting to $190,000 were discounted by the defendants Samuel Thomas, The Chase National Bank and the Manhattan Trust Company for cash, the Chase National Bank advancing the sum of

21

$60,000 on September 17, 1896, Thomas advancing the sum of $100,000 on September 18, 1896, and the Manhattan Trust Company advancing the sum of $30,000 on September 21, 1896. The remainder of the issued notes were given to McDonald or his creditors on account of their claims. After the execution of this trust deed the improvement company received the £100,000 of second mortgage bonds from the colonial authorities, and on the 19th day of September delivered them to the trustee the Manhattan Trust Company. At this time the bonds were registered in the name of the colonial secretary and were not assigned or indorsed by him so as to be negotiable. Subsequently, as found by the referee, and on the 26th day of October, the legal title to the shares of stock was transferred to the defendant, the Manhattan Trust Company, and the second mortgage bonds were transferred by the colonial secretary and made payable to bearer. On December 10, 1896, the plaintiff first learned of the transfer of the stock and bonds to the defendant, the Manhattan Trust Company, and demanded their surrender, which was refused. Thereupon the plaintiff brought this action against that defendant and the West India Improvement Company, praying judgment that the plaintiff's mortgage be declared a prior and superior lien on the securities transferred to the Manhattan Trust Company; that that defendant be required to surrender the securities to the plaintiff and that both defendants be enjoined from making any sale or disposition of the securities. Subsequently, on the application of the Manhattan Trust Company, the various holders of the notes were made parties defendant to the action.

The learned referee has found the facts as I have stated them. The first question of law presented to him for determination was whether the mortgage to the plaintiff by its terms covered the stock and bonds subsequently transferred to the Manhattan Trust Company. He held that it did. In the opinion delivered by the learned referee the question is so fully argued and the conclusion reached is so clearly justified by the reasons there given that we shall not attempt to add anything

to the discussion, but merely express our approval and concurrence.  That question being disposed of, we are brought to the consideration of the superiority of the respective claims of the two mortgagees or assignees.  At the time of the execution of the mortgage to the plaintiff, the securities, the subject of this action, had not come into existence  The right of the improvement company to the securities was dependent on its performance of the contract with the colonial government. But in equity this right was subject to assignment to the same extent as if the improvement company had executed its contract and become entitled to receive the securities.  (*Field* v. *Mayor, etc.; of N. Y.*, 6 N. Y. 179 ; *York* v. *Conde*, 147 N. Y. 486 ; *Fortunato* v. *Patten*, Id. 277.)  A court of equity " does not hold that a conveyance of that which does not exist operates as a present transfer in equity any more than it does in law. But it construes the instrument as operating by way of present contract, to give a lien which, as between the parties, takes. effect and attaches to the subject of it as soon as it comes into the ownership of the party.  Such we deem the rule to be in equity in this state." (*Kribbs* v. *Alford*, 120 N. Y. 519.  See cases there cited.)  So far as it relates to the mortgage bonds, the trust deed to the defendant, the Manhattan Trust Company, was merely an equitable assignment of a chose in action. The parties who discounted the trust notes and advanced money thereon did so, not on the faith of the bonds themselves, but on the promise of the improvement company when it received the bonds to deliver them to the trustee.  The certificates attached to the notes informed the holders that the assignment was only of the right, title and interest of the improvement company in the bonds and that the bonds were not in its possession.  It is the general rule in equity, which prevails, so far as I know, in all jurisdictions that follow the. common law, that between two conflicting equitable interests or liens, other things being equal, the one that is prior in time is superior in right.  It is further the settled law of this state, though a different rule prevails not only in England, but in the Federal courts and in some of the states, that a *bona fide*

purchaser for value of a chose in action takes it subject not only to the equities between the parties, but also to latent equities in favor of third persons, and that to secure his superiority it is not necessary that the earlier assignee should give any notice of his assignment to the debtor or trustee. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Owen* v. *Evans*, 134 N. Y. 514; *Stevenson Brewing Co.* v. *Iba*, 155 id. 224; *Niles* v. *Mathusa*, 162 id. 546.) It would, therefore, seem clear that, apart from the effect of the delivery of the bonds by the improvement company to the Manhattan Trust Company, the lien of the plaintiff was superior to that acquired by the Manhattan Trust Company or its *cestuis que trust*, the noteholders. This proposition seems to have been recognized and admitted by the learned referee, but he was of opinion that the subsequent deposit of the bonds gave the Manhattan Company and those noteholders who advanced money the superior title. He based this determination on the principle that between successive interests wholly equitable and between two innocent purchasers, in good faith, for value, the one who thereafter acquires the legal estate is superior in right, even though his acquisition of the equitable interest was subsequent in time. In support of this rule the referee cites the decision of the Supreme Court of the United States in *Judson* v. *Corcoran* (17 Howard [U. S.] 612), and Pomeroy's Equity Jurisprudence (§§ 730, 732). Notwithstanding these high authorities, I entertain doubts whether that rule as applied to assignments of choses in action is the law in this state, though I do not regard the decision of this court in *Fairbanks* v. *Sargent* (104 N. Y. 108) as being decisive of the question. In that case, though the defendant had no notice of the claim of the plaintiff, he took his assignment upon no new consideration, but as security for an antecedent debt. As I understand the rule declared by Mr. Pomeroy and by the English decisions, to bring a purchaser within it he must acquire his equitable interest for value paid at the time. I do not deem it necessary to discuss this subject further, as, assuming the doctrine to prevail, the

present case does not fall within it, but under an exception
recognized by the text-writers.    Mr. Pomeroy states (§ 728):
"Such being the general rule, there are special circumstances
in which the acquisition of the legal estate, even without
notice, will not confer a priority.    *    *    *    It is settled that
where the legal estate is vested in a trustee for a prior incum-
brancer, a subsequent equitable incumbrancer gains no priority
by obtaining a conveyance of it from such trustee.    Also
where there are successive equitable mortgages, the legal estate
remaining in the mortgagor, the mortgagor cannot himself
give priority to a subsequent incumbrancer by conveying the
legal estate to him."    I have been unable to find a case
in which this proposition has actually been decided, though
there seems no authority to the contrary.    In *Mumford* v.
*Stohwasser* (L. R. [18 Eq. Cas.] 556) the question would
have arisen had not the Master of the Rolls, Sir GEORGE
JESSEL, been careful to say that he found as a matter of fact
that the purchaser of the equitable estate, though he
had acquired his equitable interest without notice and for
value, had notice of the outstanding equity of the third
person at the time he acquired the legal estate.    After this
statement the judge goes on to say: "I do not mean the
actual case now before me, because I hold that the mortgagee
had notice; but supposing that I did not so hold, this would
be the case of a trustee knowing that he was a trustee assign-
ing over the legal estate to a person who did not know he was
a trustee, that person having previously acquired an equitable
interest; and I should hold, if that neat point came for
decision, which I think it does not in this case, that the second
equitable incumbrancer or the purchaser of the equity did not
thereby gain any priority; in other words, that a person know-
ing that he is a trustee, cannot, without receiving value at the
time, by committing a breach of trust, deprive his own *cestui
que trust* of his rights." (*Mumford* v. *Stohwasser*, L. R.
[18 Eq. Cas.] 556.)    All that can be said of the case is that it
expresses the view of an eminent judge.    The question must,
therefore, in the absence of authority, be decided on principle

and reason. What was the duty of the improvement company at the time it received the bonds from the colonial authorities of Jamaica? It had been guilty of misconduct, though it may be not of intentional fraud, in transferring its equitable interest in the bonds to two different parties, neither of whom had notice of the transaction with the other. Under the law in this state the plaintiff had the superior right to the bonds at the time of their receipt. Had the improvement company delivered the bonds to neither party and a litigation ensued, certainly the law would have given the bonds to the plaintiff. Can it be questioned that it was the duty of the improvement company to deliver the bonds to the party to whom the law would have awarded them? It is true that the improvement company, when it received the money on its notes, promised to deliver the bonds to the Manhattan Trust Company, but it had equally promised to deliver them to the plaintiff when it negotiated the bonds issued under the mortgage to that company. It could not perform its agreement with the Manhattan Trust Company at the expense of the plaintiff. As the law fixes the superiority of the respective rights of successive purchasers for value of equitable interests in choses in action, I am at a loss to see on what sound principle or for what good reason it can be asserted that the assignor may, of his own volition and at his own election, vary or alter those superiorities. Of course, after the bonds were delivered in negotiable form to the Manhattan Trust Company, any person advancing money on the security of the bonds would be entitled to protection. There is no such person in this case. If the Manhattan Trust Company had notice of the plaintiff's lien at the time it received the bonds, unquestionably under all the decisions and within the dicta of all the text writers, it could not have held the bonds as against the plaintiff. How does its ignorance in any way increase its right or equity when it parted with nothing by reason of such ignorance?

At this stage of the discussion it is proper to notice the opinion delivered by Judge FINCH on the second appeal in

*Fairbanks* v. *Sargent* (117 N. Y. 320), for that decision now comes in point.   I have already said that the case differs from the present one in that there the second assignee did not part with value at the time of his assignment, but took it as security for an antecedent debt.   Nevertheless the defendant claimed the benefit of the rule that while " an assignee of a mere equity, like a chose in action, must indeed stand upon the title of his assignor, and must fail if his assignor had made a prior assignment of the same equity, but if, in addition to his equity he succeeds in acquiring the legal title without notice of the prior assignment, that title cannot be taken from him by the prior assignee," and no point seems to have been made as to the character of the consideration for his assignment.   Judge Finch, admitting for the argument only the existence of the rule, held that when the defendant's assignor received the bonds from the debtor, the right of the plaintiff, an earlier assignee, at once attached, and that to the extent of his interest he then acquired, not only the equitable but the legal title, a legal title that was not lost by the transfer of the bonds from such assignor to the defendant, because no new consideration was paid at the time of the transfer.   Applying the same reasoning it would seem decisive of the present case.   The instant the improvement company received the bonds in negotiable form from the colonial authorities, the plaintiff acquired the legal title thereto as against every one except subsequent purchasers for value and in good faith.

In the determination of the rights of the parties to the capital stock of the Jamaica Railway Company we must consider questions which do not rise as to the mortgage bonds. At the time the improvement company made the assignment to the Manhattan Trust Company it delivered to that company the certificates of stock (which then stood in its own name) with transfers and powers of attorney indorsed on the certificates and executed by the assignor.   If the railway company had been a domestic corporation and the transfer of its stock subject to the law which prevails in this state, it is clear that by the delivery of such certificates and transfers the Manhattan

Trust Company would have acquired the legal title to the stock as against every one except the railway company (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325), and being a purchaser in good faith for value to the amount of the notes which were discounted for cash, would have held it free from any lien or claim of the plaintiff. (*Crocker* v. *Crocker*, 31 N. Y. 507.)   The learned referee has found as a fact that by the law of Jamaica the legal title to the capital stock of the railway company as between the improvement company and the Manhattan Trust Company could pass only by a deed of transfer, and did not pass by the delivery of the certificates with the transfers in blank indorsed thereon and signed by it.   I am not entirely certain as to the construction which should be given to this finding.   The only evidence in the case as to the law in Jamaica is the statute or act ratifying the agreement between the colonial authorities and Mr. Wesson and providing for the incorporation of the railway company.   This statute is not set forth in full in the record, but an abstract of its provisions is given.   By the statute it is provided that certificates of stock shall be *prima facie* evidence of the title of the stockholders to the amount of the stock therein specified.   "Nevertheless the want of such certificate shall not prevent the holder of any stock from disposing thereof."   It is further provided that "every stockholder may sell or transfer all or any part of his interest in the stock of the company; and every such transfer shall be by deed duly stamped, and such deed may be according to the form in the Schedule C to this law annexed, or to the like effect."   The transfers on the stock certificates are in the form provided by Schedule C.   Under this law the legal title did not pass to the assignee until registration on the books of the company.   This seems to be the general rule in England, where the assignee is deemed to acquire only an equitable title until he has transferred the stock on the books of the corporation.   Certificates of stock are neither choses in action nor negotiable instruments; but both in England and in this country it has been sought to render dealings in stocks practicable.

and to secure the rights of purchasers by giving to stock certificates attributes of negotiability to a certain limited extent. So the rule is settled in England that a purchaser in good faith without notice who succeeds in obtaining his transfer to be first registered holds his stock free from any equities of other persons. If the instruments which the Manhattan Trust Company obtained from the improvement company before the advance of the money on the notes, were sufficient to enable the trust company by its own act or at its own volition to acquire the legal title to the stock, then upon such transfer on the books of the railway company the title of the trust company became indefeasible. (*Dodds* v. *Hills*, 2 Heming & Miller, 424.) Exactly in what manner or by what means the Manhattan Trust Company succeeded in obtaining the transfer of the stock does not appear in this record. It is not pointed out in what respect the assignments indorsed on the stock certificates were insufficient except that the name of the assignee was not filled in. If for this reason they were inoperative, I do not see why the trust deed itself was not sufficient under the statute to authorize the railway company to transfer the stock. Since there must be a new trial for the reasons already expressed, it is not necessary to pursue this discussion further, as whatever obscurity on the subject arises from the present state of the record may be removed on the next hearing.

We think that in no view of the case should the complaint have been dismissed as against the West India Improvement Company. If, as was decided below, *bona fide* holders of the notes for value were entitled to a lien on the transferred property superior to that of the plaintiff, then that defendant should have been restrained from negotiating the unissued note and thus further impairing the plaintiff's security.

The judgment appealed from should be reversed and a new trial granted, costs to abide the final award of costs.

Parker, Ch. J., O'Brien, Bartlett, Martin, Vann and Landon, JJ., concur.

Judgment reversed, etc.