## ALLIN AXFORD AND OTHERS v. THE WESTERN SYNDICATE INVESTMENT COMPANY.

## THOMAS DUNN AND OTHERS, APPELLANTS.[1]

No. 20,907.

July 1, 1918.

**Supersedeas bond.**

The supreme court has the power to protect a respondent during the pendency of an appeal against inadequate or improvident stay bonds approved and filed in the lower court. In the first instance, the fixing and approval of a stay bond is not for the supreme court. After a case is there upon a cost bond alone, the court retains jurisdiction to proceed until a supersedeas is furnished. In this case it was *held* fixing the stay bond at $20,000 was not an abuse of discretion. [Reporter.]

January 17, 1919.

**Corporation — issues and transfer of stock — what law governs.**

1. The rights of stockholders in respect to the issue, ownership and transfer of stock in a corporation are governed by the laws of the state under which the corporation was formed, insofar as such laws deal with and affect such rights.

**Same — what is fictitious stock under South Dakota Constitution.**

2. Under the provisions of article 17, § 8, Constitution of the state of South Dakota, stock issued by a corporation without consideration is fictitious and void.

**Same — fictitious entries not evidence of the facts recorded.**

3. Sham and fictitious entries in the books of a corporation are not evidence of the existence of the facts stated in such entries.

**Same — secret profit of director invalid.**

4. A director owes to the corporation and its stockholders the utmost

[1]Reported in 168 N. W. 97; 170 N. W. 587.

good faith, and he may not enter into an agreement whereby he derives a secret profit at the expense of the corporation.

**Same — cancelation of stock — findings supported by evidence.**
5. The cancelation of certain shares of stock in a corporation, issued to defendants upon a transfer of void stock *held* to be justified by the findings of the trial court.

Action in the district court for Hennepin county for the appointment of a receiver for defendant corporation, for the cancelation of the Crawford stock, and to restrain defendants from parting with any of the stock of defendant corporation. Defendants Smith and Wagner filed their cross complaint against defendant corporation and Thomas Dunn, R. E. Johnson and M. D. Crawford praying that, if the stock held by them should be canceled, defendants account to them for $30,000 and interest as a condition to its cancelation. The facts are stated in the opinion. The case was tried before Fish, J., who made findings and ordered an interlocutory decree in favor of plaintiffs, canceling the Crawford stock and dismissing the cross complaint of defendants Smith and Wagner. Defendants' motion for amended findings was denied. From an order denying their motion for amended findings and conclusions of law or for a new trial, defendants Dunn, Johnson and Crawford appealed. Affirmed.

*Selover, Schultz & Selover* and *J. A. Mansfield,* for appellants.

*Hall, Alexander & Purdy, J. N. Berg, Keith, Kingman, Cross & Wallace,* and *Cherry & Abbott,* for respondent.

The following opinion was filed on July 1, 1918:

PER CURIAM.

The respondents were ordered to show cause why this court should not grant appellants' motion to accept as a supersedeas the $2,000 bond given herein and approved by the trial court as a bond for costs only. On the hearing this court was asked to fix the amount of a stay bond, if of the opinion that the said bond was inadequate.

This court has the power to protect a respondent during the pendency of an appeal against inadequate or improvident stay bonds approved and filed in the court below. Bock v. Sauk Center Grocery Co. 100 Minn. 71, 110 N. W. 257. And it is argued that the like power exists to pro-

tect an appellant against the exaction of an exorbitant supersedeas. In this case it appears that the trial court, since the notice of motion herein but before its submission, fixed the amount of the supersedeas in the sum of $20,000. The fixing of the amount of a·stay bond and its approval is not, in the first instance, for this court. Section 8003, G. S. 1913. After a case is here upon a cost bond alone, the court below retains jurisdiction to proceed until a supersedeas is furnished. If this court has any control over the matter of supersedeas in such a case, and that we shall not now stop to consider, it must necessarily be confined to the correction of an arbitrary action of the court below. From the findings of the trial court, in the instant case, it is apparent that the recovery of such large sums of money depends on the final outcome of the litigation yet to be carried on, pursuant to the judgment ordered, that in no view can the amount of the stay bond as fixed be regarded as excessive or indicative of an abuse of discretion.

The order to show cause is discharged and the temporary stay vacated.

On January 17, 1919, the following opinion was filed:

QUINN, J.

Action brought by Allin Axford and 16 other named stockholders on behalf of themselves and all others similarly situated, as plaintiffs against the Western Syndicate Investment Company, Thomas Dunn, R. E. Johnson and M. D. Crawford, defendants. Subsequent to the service of the summons and pursuant to an order of the court in the premises, M. C. Smith, E. E. Wagner, C. E. Warner, E. R. Morgans and William B. Roberts appeared and filed answers. E. Klaveness appeared of his own motion and filed a complaint in intervention.

The second amended complaint, upon which the action was tried, is, in form, a complaint in a stockholders' suit for the benefit of the corporation. It is therein alleged that the plaintiffs are bona fide holders of 420 shares of the common stock of the defendant company, issued to them prior to the issuance of the 5,300 shares by this action sought to be canceled; that as the result of a conspiracy between the defendants Dunn, Johnson and Crawford, the said 5,300 shares of stock were issued without consideration to the defendant company and in fraud of all the stockholders and of the said company; that while the certificates were

issued in the name of Crawford, they were, in fact, for the use and benefit of the defendant Dunn; that as a result thereof and because of the misconduct of the defendants Dunn and Johnson as its officers and agents, the defendant company is in imminent danger of insolvency; that a receiver should be appointed to take charge of the affairs of the defendant company and that an accounting should be taken with the defendants Dunn and Johnson; that immediately upon learning of the facts set forth in the complaint, plaintiffs demanded from the defendants the cancelation of said shares of stock, and demanded of the defendant company that proper action be brought to obtain the cancelation thereof, which requests were refused.

In their answers the defendants Dunn, Johnson and Crawford, denied the charges of fraud and deception, and alleged that the shares of stock sought to be canceled were issued in lawful exchange for an option for the purchase of 9,000 shares of the capital stock in the Surety Company, and that the defendant company duly ratified said transaction. The answer of Smith and Wagner was a general denial, coupled with an allegation that they purchased the stock held by them in good faith, for an adequate consideration, and without notice of any wrong in connection with the issuance thereof. Warner and Morgans pleaded along the lines of the complaint, and Roberts disclaimed owning any of the Crawford issue. The complaint in intervention was along the lines of the second amended complaint.

With issues joined as indicated, a trial lasting for a number of weeks was had. Two days were consumed by the arguments, and the findings of fact bearing upon the issuance and disposal of the 5,300 shares of stock sought to be canceled are in detail. The sufficiency of the testimony to sustain the findings is not raised by the assignments of error.

From the facts so determined, the trial court found as conclusions:

(1) That the 5,300 shares of stock issued to Crawford were without consideration and constituted a fictitious increase of stock, and were therefore void under the Constitution and laws of the state of South Dakota.

(2) That none of the parties to this action acquired any right, title or interest in or to any such stock by virtue of any of the certificates issued to Crawford.

(3) That plaintiffs are entitled to an interlocutory judgment, adjudging and decreeing the cancelation of the following stock certificates so issued on account thereof, to-wit:

| E. R. Morgans | Oct. 1, 1915 | Cert. Nos. 197–198 | 14 shares |
| C. E. Warner | Oct. 1, 27, 1915 | Cert. Nos. 204–215 | 10 shares |
| Thomas Dunn | Feb. 12, 1916 | Cert. Nos. 246–247 | 81 shares |
| M. D. Crawford | May 25, 1916 | Cert. No. 315 | 125 shares |
| E. Klaveness | May 25, 1916 | Cert. Nos. 303 to 308 inc. | |
| | | | 675 shares |
| E. Klaveness | June 22, 1916 | Cert. No. 323 | 25 shares |
| E. Klaveness | Sept. 25, 1916 | Cert. No. 311 | 400 shares |
| E. E. Wagner & | | | |
| M. C. Smith | Sept. 25, 1916 | Cert. No. 348 | 2085 shares |
| Wm. B. Roberts | Oct. 6, 1916 | Cert. Nos. 378 to 383 inc. | |
| | | | 200 shares |

(4) That each of said defendants and the intervener surrender into court each of such certificates for cancelation.

(5) Authorizing the receiver, to be hereafter appointed, to bring proper actions for the cancelation of all other certificates representing any of such stock so issued to Crawford.

(6) Directing an accounting to be taken with the defendants Dunn and Johnson.

(7) Continuing such receivership until the further order of the court in the premises.

(8) Dismissing the cross complaint of Smith and Wagner and the complaint of intervention, insofar as the same set forth any claim in or to any stock under or by virtue of any certificate so issued to Crawford.

(9) That plaintiffs recover from the defendants Dunn, Johnson, Crawford, Wagner and Smith, the costs and disbursements of this action.

The Surety Fund Life Company was incorporated in 1898, under the laws of the state of Minnesota, for the transaction of life and endowment insurance upon the assessment plan. In 1910, Leslie C. Lane, E. J. Miller and W. P. Hobart were respectively president, secretary and treas-

urer thereof. In December of that year, the organization was changed to that of a stock company, with an authorized capital of $100,000, divided into 10,000 shares. The trustees, Lane, Miller and Hobart, each immediately subscribed for 3,000 shares and Crawford for 100 shares thereof. It was necessary for Miller and Hobart to make a loan for the amount of their subscription in order to pay for the same. The three figured on a profit of $50,000 each, and accordingly fixed upon $249,000 as the selling price thereof. They agreed to stand together in the disposal of the same, one was not to sell unless the others could. They could not obtain the stock until such time as Miller and Hobart might borrow $66,000, their amount of the subscription price. Crawford had subscribed for 100 shares and understood the entire transaction. He had a verbal agreement with Lane, Miller and Hobart, that he could retain all that might be received for the 9,000 shares, in excess of $249,000, and they were to pay him $1,000 each as a commission in case he procured a purchaser. Crawford was in touch with Dunn, and reported all prospective buyers to the Surety Company office.

With this situation before them, Dunn conceived the idea of incorporating a holding company and of obtaining, in its name, the handling of the Surety Company and other like concerns. Accordingly, on June 26, 1913, he caused the defendant Western Syndicate Investment Company to be incorporated under the laws of the state of South Dakota, with an authorized capital of $500,000, divided into 10,000 shares of common and 10,000 shares of preferred, nonvoting stock. The sole incorporators were R. E. Johnson, J. E. Mather and C. J. Hedwall, each holding one share of stock. The principal place of business was designated as Sioux Falls, South Dakota, but an office was maintained at Minneapolis, where the books and records were kept. Johnson was a director and the secretary of the company from the time of its organization, and in custody of the books and records.

An option in form had been prepared, purporting to bind Lane, Miller and Hobart to sell to the defendant Dunn the 9,000 shares of stock upon the payment of $249,000, as therein specified. On July 2, 1913, Dunn, Crawford and the three incorporators appeared at the office of the Surety Company and sought to induce Lane, Miller and Hobart to execute such contract. They refused, giving as their reason that they

141 M.—27.

had nothing to sell until such time as the stock for which they had sub-scribed was issued and paid for, and that they would consider no propo-sition until that time.  On the same day, the secretary caused to be en-tered in the corporate records of the defendant company, what purported to be an offer from Crawford to sell to the company an option from Lane, Miller and Hobart to purchase the 9,000 shares of surety stock for $400,000, and on July 15 an entry was made in the form of a counter offer by the company to Crawford that it would pay Lane, Miller and Hobart the $249,000 for the stock and issue to him 5,300 shares of its common and 100 shares of preferred stock in exchange for his interest in the option.  On the following day an entry was made in the form of an acceptance by Crawford of such offer, and on the day after, July 17, 1913, a writing in the form of an assignment of such option by Craw-ford to the company was entered, following which was an acknowledg-ment of the assignment and a resolution in form directing the issuance of the stock.  At the same time certificates for 5,300 shares of common stock were written in the stock book, but were not detached or delivered and were afterwards marked "Canceled."  There was also entered in the records the form of an option, identical with the one above referred to, except that the name of Crawford appeared instead of Dunn, and what purported to be a report made by an actuary, estimating the value of the surety stock at $750,000.

At the time such entries were made, neither Dunn nor Crawford held an option for the purchase of the Surety stock.  The Surety Company was still doing business on the assessment plan, none of its stock had been issued or paid for, and Lane, Miller and Hobart refused to con-sider any proposition therefor until the same was issued and paid for.

In September, 1913, Dunn and Johnson put out a prospectus in which it appeared that the defendant company held a contract for the purchase of the Surety Company stock.  In reliance thereon there were sold to divers bona fide purchasers during the summer of 1914, 516.42 shares of common stock for the par value of $12,910.50, of which 185 shares were sold and issued to certain of the plaintiffs during the month of July, 1914.  On August 1, 1914, certificates for 5,300 shares of common stock were issued to Crawford, and thereafter he voted the same at all stockholders' meetings.

On May 20, 1915, the defendant company loaned to Miller and Hobart sufficient money with which to pay for the stock they had subscribed for, and accordingly on that day the 9,000 shares of Surety stock were paid for and the certificates therefor issued to Lane, Miller and Hobart. Of these matters Dunn and Johnson must have been informed, as they indorsed the notes to enable the defendant company to raise the money with which to make the loan. Thereupon Lane, Miller and Hobart gave to Crawford an option to purchase, on or before December 31, 1915, the 9,000 shares of Surety stock for $249,000, payable as follows: $83,000 on or before December 31, 1915, $20,000 on or before March 31, 1916, and $146,000 on or before March 31, 1917. On the same day Crawford assigned this contract to the defendant company. Thereafter he collected from Lane, Miller and Hobart, approximately $3,000, commission for the sale of their stock. The board of directors never, by resolution or otherwise, appraised or estimated the value of the option, or approved or accepted the same in exchange for the 5,300 shares of stock which had been issued 10 months prior to the assignment of the option. An option, in the sense here used, is an offer to sell, coupled with an agreement to hold the offer open for acceptance for the time specified. 39 Cyc. 1232.

The trial court found specifically, that the transactions and entries upon the records from July 2 to 17, 1913, were wholly sham and fictitious, and that the purpose thereof was to make it appear that the 5,300 shares of stock had been issued to Crawford for a consideration, while in truth and in fact it was the intention of all the parties thereto, in case a transfer of the Surety Company stock to the defendant company should at some future time be effected, that the stock issued therefor in the name of Crawford should be held by Dunn and Johnson as secret profits. The court further found that the certificates for the 5,300 shares were issued to Crawford without consideration; that they were held for the use and benefit of Dunn and those associated with him, in attempting to deprive the company thereof without consideration; that none of the parties to this action holding any of the Crawford issue are bona fide holders thereof, without notice of the defects in the issuance thereof; that the defendants Dunn, Johnson and Crawford, by false and misleading entries in the corporate records, and in the prospectus

and official reports, fraudulently concealed from the stockholders and directors, not involved in such plan, the procuring of such stock without consideration, and that none of the stockholders or directors other than those so implicated, in any manner ratified or confirmed the issuance of said stock to Crawford.

The judgment entered is interlocutory. It relates only to the validity of the Crawford stock. It determines no other issue. Subsequent to the entry thereof, the defendants Dunn, Johnson and Crawford, moved for an order amending the findings of fact and conclusions of law. The motion was denied. The appeal is by the defendants Dunn, Johnson and Crawford alone, from the judgment, the order denying their motion for amended findings and conclusions, and from an order denying their motion for a new trial.

The assignments of error are that the court erred:

(1) In rendering a decree canceling the so-called Crawford stock.

(2) In denying the motion of appellants for amendments of the findings and conclusions.

(3) In denying appellants' motion for a new trial.

(4) In excluding the testimony of the witness Austin, as to the value of the Surety Company stock.

(5) In that the findings of fact do not justify the conclusions of law.

Appellants contend that the transaction between Crawford and the company for the 5,300 shares of its stock was completed on July 17 1913; that Johnson, Mather and Hedwall were then the only stockholders and directors; that, as appears from the corporate records, Crawford made an offer to sell the option to the company for $400,000; that the company in turn offered to issue to him 5,300 shares of its common stock and 100 shares of its preferred stock in exchange for the option which he accepted, and assigned the option to the company; that a resolution was then entered acknowledging assignment and directing the issuance of certificates to him therefor, which completely closed the transaction, and that Crawford's title to the stock dates from that time that it is immaterial when the certificates were issued or delivered; that all of the stockholders and directors having participated in the transaction, the issuance of the stock cannot now be questioned, either by the corporation or subsequent stockholders. The difficulty with this conten

tion is, that it is confronted by the findings of the trial court that the entries relating thereto are sham and fictitious. This being established, entries of themselves fall far short of being sufficient proof to establish the matters for which they purport to stand. A director owes to the corporation and its stockholders the utmost good faith. He may not enter into an agreement whereby he derives a secret profit at the expense of the corporation. Parker v. Nickerson, 112 Mass. 195; Landes v. Hart, 131 App. Div. 6, 115 N. Y. Supp. 337.

A stock certificate is at best a mere writing which evidences the shareholder's interest in the corporation of which he is a member. It is simply evidence of title to stock. The entries made in the corporate records from July 2 to 17, 1913, standing impeached as they do by the finding of the court, do not furnish proof that Crawford became a member or stockholder of the defendant company. It is true that certificates were in form issued to him on August 1, 1914, and that he thereafter voted the same at the various stockholders' meetings, but this of itself did not constitute him a stockholder. He had never subscribed for any stock, had never paid for any or done any act entitling him to any stock in the company. Fairly considered, the most to be said is, that he had a verbal understanding with Lane, Miller and Hobart, that in case he succeeded in finding a purchaser ready and willing to take the stock in the Surety Company, for which they had subscribed, at the price and upon the terms stated, they would pay him a commission of $1,000 each, and in addition thereto allow him to retain whatever amount he might obtain in excess of the stated selling price. He had no exclusive right of sale. The organization of the company was completed on June 26, 1913. Seven days thereafter, July 2, Dunn, Crawford and the three incorporators, Johnson, Mather and Hedwall, called upon Lane, Miller and Hobart at their office for the purpose of procuring, in the name of Dunn, an option to purchase the 9,000 shares. They were then informed that no proposition therefor would be entertained until a loan was procured, the stock paid for and the certificates issued therefor. On that day the entries in the corporate records, upon which the defendants base the rights of Crawford and which the court justly found to be sham and fictitious, were begun, and the efforts continued until August 1, 1914, when another step toward the goal was taken, and certificates for 5,300

shares of stock were issued and delivered to Crawford, by these same parties, though the number of directors had been increased. On May 20, the company, through the efforts of Dunn and Johnson, furnished the necessary loan to Miller and Hobart, the Surety Company was paid for the stock, and certificates therefor issued. Lane, Miller and Hobart then gave Crawford an option on the stock and Crawford immediately assigned the same to the company. It is clear that there never was the slightest necessity of issuing the 5,300 shares of stock in order to procure the option rights. The defendants had furnished to Lane, Miller and Hobart the loan with which to procure the stock. They received a clear profit of $150,000. The so-called option was a mere trick to which they consented in order to effect the sale. No such option was in existence until long after the pretended purchase thereof, or the time when the Crawford certificates were issued.

The statement by the learned trial judge in his memorandum is pertinent: "This wholly fictitious transaction, conceived and executed for the purpose of robbing the honest stockholders of the corporation for the benefit of officers and agents in duty bound to protect them, surely cannot be given its intended effect. Neither the ingenious methods employed nor the studied efforts to conceal the fraud, continued even to the close of the trial yet effectually exposed, are available to prevent redress."

The defendant company is a South Dakota corporation, with its principal place of business in that state, and the rights of the parties so far as they involve the ownership of stock therein are governed by the laws of that state. First Nat. Bank of Deadwood v. Gustin Minerva C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L.R.A. 676, 18 Am. St. 510.

Article 17, § 8, Constitution of South Dakota, provides:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

Provisions similar to the foregoing exist in several of the states and have been a frequent subject of judicial interpretation and construction. In the case of Rogers v. Gladiator Gold M. & M. Co. 21 S. D. 412, 113 N. W. 86, it was held that a contract made in contravention of the Constitution above quoted was illegal and void. In Anderson v. Scandia

Mining Syndicate, 26 S. D. 558, 128 N. W. 1016, a suit for the cancelation of stock in a corporation, issued for less than par value, was held to be null and void. See also Lyon v. Bleeg, 240 Fed. 405, 153 C.C.A. 331; Kemmerer v. St. Louis Blast Furnace Co. 212 Fed. 63, 128 C.C.A. 519; Clarke v. Lincoln Lumber Co. 59 Wis. 655, 18 N. W. 492; Kellerman v. Maier, 116 Cal. 416, 48 Pac. 377.

The Crawford issue was a fictitious increase of stock and by the plain terms of the South Dakota Constitution quoted was utterly void.

Stock certificates are not negotiable instruments. . They do not run to bearer or to the order of the person to whom they are given. They simply declare that the person named in the certificate is entitled to a certain number of shares of stock. Central Trust Co. v. West India Imp. Co. 169 N. Y. 314, 62 N. E. 387. An assignment or transfer thereof is necessarily subject to inherent infirmities and to all rights and liabilities attached thereto at the time of the assignment. So that if liability for a loss had previously been incurred by the corporation an unqualified assignee may be called upon to contribute to payment or discharge thereof. In other words, the transfer works a complete substitution, carrying with it, in the absence of a statute to the contrary, all rights and liabilities of the assignor. 9 Modern Am. Law, p. 226; Webster v. Upton, 91 U. S. 65, 23 L. ed. 384.

Under the foregoing rule, the order canceling the shares of stock held by defendants upon transfers on account of the Crawford issue, was fully justified. There was no error in denying the motion for amended findings, nor in the order denying a new trial.

The judgment appealed from, and the orders involved in the appeal, are affirmed.