JENNIE E. MERTZ AND OTHERS v. H. D. HUDSON
MANUFACTURING COMPANY.
I. O. ALTENBURGER v. SAME.[1]

June 14, 1935.

Nos. 30,433, 30,434, 30,435.

[1]Reported in 261 N. W. 472.

*Fowler, Carlson, Furber & Johnson* and *Ralph H. Comaford,* for appellant.

*Grannis & Grannis,* for respondents.

I. M. OLSEN, JUSTICE.

These three actions were tried together before the court without a jury. The defendant is a corporation organized under the laws of this state. The plaintiffs seek to recover the purchase price of shares of preferred stock in the defendant corporation. The trial court found for the respective plaintiffs in each case. The appeals are from the judgments entered. There were no motions for new trials, and there is no settled case. The errors assigned are that the findings of fact do not sustain the conclusions of law and do not sustain the judgments and that the court erred in denying motions to amend its conclusions of law and for judgments in favor of defendant.

The findings of fact in the Jennie E. Mertz case, necessary to be considered, are, in substance, that prior to and up to July 20, 1929, she owned seven shares of defendant's preferred capital stock of the par value of $100 per share; that at the time the shares were issued to her and up to the date stated defendant's articles of incorporation provided as follows:

"The capital stock of said corporation shall be $2,000,000.00 divided into 20,000 shares of the par value of $100.00 per share. Of

this stock, 15,000 shares shall be common stock and 5,000 shares shall be preferred stock. Said stock shall be paid for at such time and in such manner as shall be prescribed by the board of directors. The holders of said preferred stock shall be entitled to have and receive cumulative dividends thereon at a rate not exceeding 7% per annum, computing from the time of issue to December 31st in each year, and to be due and payable on May 1st, following the close of each fiscal year. Said dividend to be regularly declared by authority and upon action of the board of directors. Such payment to be made from the net earnings of the corporation and charged to surplus account. No dividend shall be declared or paid to the holders of any of the common stock of the corporation until after all the dividends herein described on said preferred stock shall have been earned, declared and paid. The holders of the common stock shall be entitled to all other earnings of the corporation. In the event of the dissolution of the corporation, the holders of its preferred stock shall be entitled to the receipt of the par value and all accrued and unpaid dividends thereon as herein specified, and no more, out of the assets of the corporation, before any sums whatever shall be paid to the holders of the common stock, and the remainder of all such assets shall belong and shall be distributed to the holders of the common stock."

On July 20, 1929, the defendant amended its articles of incorporation in reference to capital stock so as to provide as follows:

"The capital stock of this corporation shall be Two Million, Five Hundred Thousand Dollars ($2,500,000.00), divided into two hundred fifty thousand (250,000) shares of the par value of Ten Dollars ($10.00) per share. Of this stock One Million, Five Hundred Thousand Dollars ($1,500,000.00) shall be Common Stock, and One Million Dollars ($1,000,000.00) shall be Preferred Stock. Said stock shall be paid for at such times and in such manner as shall be prescribed by the Board of Directors.

"The holders of said Preferred Stock shall be entitled to receive from the net earnings, or surplus, of the corporation, cumulative dividends at a rate not exceeding seven per cent (7%) per annum.

Whenever the full dividends have been paid and the full dividend thereon for the then current dividend period shall have been paid or declared, and a sum sufficient for the payment thereof set apart, any remaining annual net profits, or net assets, in excess of capital, available for dividends for the then current fiscal year which the Board of Directors may, in its discretion, see fit to distribute by way of dividends, shall be distributed as dividends on the Common Stock alone pro rata.

"In case of the liquidation or dissolution of the company, the assets, whether consisting of capital assets or accumulated earnings, shall be distributed as follows:

"First. To the holders of the Preferred Stock to the extent of the full par value of the shares of said stock, together with unpaid dividends accumulated and accrued thereon.

"Second. To the holders of the Common Stock, who shall be entitled to all remaining assets and funds according to their respective shares."

On July 23, 1930, plaintiff Jennie E. Mertz surrendered her certificate for the seven shares of original preferred stock of the par value of $100 per share and received in place thereof a certificate for 70 shares of the defendant's preferred stock of the par value of $10 per share.

The court further found that the value of the seven shares of stock of the par value of $100 per share was $700 and that the value of the 70 shares of the par value of $10 per share received by plaintiff was the same amount. One dividend of 60 cents per share had been received by plaintiff on the $10 shares. Plaintiff had never offered to return the dividend received or the certificate for the 70 shares of stock.

The findings of fact in the other two cases are the same except as to number of shares involved and some difference in the dates when the old certificates were surrendered and new certificates issued.

In the Altenburger case there is involved also an actual sale in February, 1930, of 30 shares of the preferred $10 par value stock. That transaction will be considered later herein.

It is admitted that the defendant had not applied for registration of the new $10 par value stock or been authorized by the commissioner of securities to sell or dispose of same. Plaintiffs' counsel say in their brief, at the beginning of their argument, that the principal question presented is whether the "sale and exchange" of the $10 par value shares was illegal and void because defendant had not been licensed to "sell and exchange" these shares. In using the term "license to sell," the registration of the security by the commissioner of securities is intended. 1 Mason Minn. St. 1927, § 53-30.

It is conceded that the amendment of defendant's articles of incorporation was authorized by the statute under which it was organized and was lawful and valid without any action thereon by the commissioner. The question presented is whether, after such amendment, the defendant was required to obtain from the commissioner registration of the $10 par value stock before issuing same to its own stockholders in place of the $100 shares owned by them. Clearly, there was no sale of any stock to these stockholders in the commonly understood meaning of that word. As far as appears, there was no change in the interest of these stockholders in the corporation or in its assets. A stockholder who owned a $100 certificate for one share was given a new certificate for ten $10 shares of the same value as the one $100 share he surrendered. All the difference was that the new certificate evidenced ownership of ten shares of the aggregate par value of $100 in place of one share of the same value. What it amounted to was a dividing up of one share into ten shares, without change in value. The new certificates evidenced the ownership of the same interest in the corporation as before. The court found, as stated, that ten of the new shares had the same actual value as one of the old shares.

The relevant statutory provisions are found in the subsections of 1 Mason Minn. St. 1927, § 3996-1. Securities are defined as including any "stock, share," etc. No securities shall be sold unless and until approved and registered by the commission as provided in the law. "Sale" or "sell" is defined as including an "exchange," etc.

For plaintiffs it is argued that there was an "exchange" of the old stock for the new, and therefore the transaction comes within the registration law. Hence the issuance of the new $10 shares to these stockholders was illegal because the new stock was not registered. The word "exchange" has several dictionary definitions depending upon the character of the transaction to which it is applied. As used in the statute in question, we take it to mean to exchange one security for a different security of some kind or for other property or rights. The certificates of stock are the evidence of the ownership of a stated interest in the corporation issuing the same. They are not the shares themselves, but are merely evidence thereof. Galbraith v. McDonald, 123 Minn. 208, 143 N. W. 353, L. R. A. 1915A, 464, Ann. Cas. 1915A, 420; Axford v. Western Syndicate Inv. Co. 141 Minn. 412, 168 N. W. 97, 170 N. W. 587. A change in the par value of the shares, standing alone, does not change the interest of the stockholder in the corporation.

The change in the form of the certificates evidencing the interest of these stockholders in the corporation was not an exchange of securities within the meaning of the word "exchange" used in the statute in defining "sale" or "sell" and was not a violation of the statute.

Counsel have found no case directly in point on the facts in the present case. Counsel for defendant cite Hood Rubber Co. v. Commonwealth, 238 Mass. 369, 131 N. E. 201; West Virginia P. & P. Co. v. Bowers (D. C.) 293 F. 144; Standard Mfg. Co. v. Heiner (D. C.) 300 F. 252; and Bates v. Firestone, 19 Ohio App. 243. Counsel for plaintiffs cite numerous cases to sustain the proposition that sales of securities in violation of the "Blue Sky Law" are invalid and entitle the purchaser to void the sale and recover the consideration paid. They also cite cases on the question of estoppel and cases involving trades of other property for corporate stock. The conclusion reached and hereinbefore stated does not require any discussion of these cases.

The court in its memorandum cites a number of cases based, however, on the assumption that the issuance of the new certificates for the $10 par value stock was illegal and voidable. As we dis-

agree with the trial court on this primary issue, there is no need of further analysis of these cases.

We agree with plaintiffs' counsel that, while certificates for corporate stock are but evidence of the rights and interest of the holder in the corporation, a sale of such certificates comes within the securities registration law. It does not follow that the issuance of such certificates in the manner here shown constitutes a sale thereof within such law.

## ALTENBURGER CASE.

■ The amendment of defendant's articles of incorporation increased the amount of its authorized capital stock. If this additional stock was to be sold generally to persons not stockholders of the corporation at the time of such sale, it would first have to be registered with the commissioner. The court found that, in addition to taking the new $10 par value stock for his old $100 par value stock, the same as the other plaintiffs, Altenburger purchased 30 additional shares of the $10 par value stock and paid therefor $300; that he paid no commission or brokerage expense in so doing. The court further found that shares of the $10 par value preferred stock had been issued and sold to persons not theretofore stockholders. There is no finding as to the number of persons to whom sold or the number of shares so sold. Based on these findings, it is argued that the sale of the 30 shares of stock mentioned was unlawful and that this also invalidated the issuance to Altenburger and the other plaintiffs of the certificates for $10 par value stock in place of their former certificates for $100 par value stock. It is sufficient to say as to this last stated proposition that it is disposed of by the holding made in section 1 of this opinion.

As to the sale of the 30 shares of additional stock to Altenburger, defendant's counsel urge that the sale is exempted from the law by § 3996-3 (4) of the statute. Section 3996-2 exempts the securities therein named from the law. Section 3996-3 (4) exempts certain sales from the law. It exempts sales of "an increase of capital stock of a corporation sold only to its stockholders and without payment of any commission or expense to any broker or agents in connection with such distribution." Altenburger was a stockholder and paid

no commission or brokerage expense. Was the sale to Altenburger unlawful and voidable because at some time not stated there were sold to persons not stockholders shares of this same class of stock without its having been registered? The findings of fact do not appear to sustain such a conclusion. Section 3996-3(1) exempts isolated sales by the issuer, such sales not being made in the course of repeated and successive sales of the same issue. The court did not find that the sales to others than stockholders were not isolated sales or that they were made in the course of repeated and successive sales of the same issue.

For the plaintiffs it is argued that under § 3996-3(4), if any of the increased capital stock is sold to persons other than existing stockholders, no matter how such sales are made, this renders sales of the same issue to existing stockholders illegal and voidable where the stock is not registered. The claim is that the words "sold only to its stockholders" must be held to mean that all sales of the increased stock must be to the existing stockholders in order to permit any sale to such stockholders without registration. That would require a very narrow construction of the provision. Suppose 90 per cent of the increased stock was sold to existing stockholders. The sales were valid when made without registration. Some years afterward the corporation made isolated sales of the remaining ten per cent of such stock without registering the stock. Would that relate back to and invalidate the prior sales to its stockholders? It should not be so held. The more reasonable construction of the section in question is that sales of the increased capital stock by the corporation to its stockholders are valid without registration, but sales to persons not stockholders are voidable unless the stock is registered.

The stockholders of the corporation had the preference right to subscribe for and take the increased capital stock in proportion to the old stock held by each. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854; Miles v. Safe D. & T. Co. 259 U. S. 247, 42 S. Ct. 483, 66 L. ed. 923.

The conclusion reached is that the sale of the 30 shares of stock to Altenburger was not a violation of the registration law and is

valid. If that conclusion is right, it necessarily follows that the issuance of the $10 par value stock to the plaintiffs, in place of the $100 par value stock, even if construed to be a "sale," was equally valid.

It is argued, and the court makes reference thereto in its memorandum, that the sale or issuance of the increased preferred capital stock would prejudice the rights of existing stockholders. The court made no findings in reference to such claims, and the question is not here for consideration. As it has been argued, a brief reference thereto is permissible. The findings are that the new $10 par value stock was of the actual value of $10 per share, and the only sale specified, the sale to Altenburger, was for the price of $10 per share. In that situation there would seem to be no ground for claiming any prejudice to the stockholders. The sale of the shares at par would bring to the corporation additional liquid assets of equal value to the stock sold, and, if anything, would better the financial position of the corporation. The suggestion that the officers of the corporation might use the increased capital for improper purposes is wholly unjustified by anything in the record.

The judgment appealed from is reversed in each case.

Reversed.

