## BATES, TRUSTEE IN BANKRUPTCY OF THE PORTAGE RUBBER CO., *v.* FIRESTONE.

*Corporations—Increase of capital stock—Compliance with Blue Sky Law unnecessary, when—Soliciting subscriptions for new stock from common stockholders.*

A domestic corporation, which by proper action of its board of directors decides to increase the number of its outstanding shares of capital stock, is not required to comply with the provisions of the Blue Sky Law (Secs. 6373-1 to 6373-24, inclusive, General Code) before it receives subscriptions from its common stockholders for their proportionate shares of the new stock, as required by Section 8699, General Code.

(Decided December 17, 1924.)

ERROR: Court of Appeals for Medina county.

*Mr. W. E. Young* and *Mr. Arthur Van Epp,* for plaintiff in error.

*Messrs. Turner, Ake, Abt & Gnau,* and *Mr. Frank Spellman,* for defendant in error.

PARDEE, J. The parties stand in this court as they did in the court below, and will be referred to as plaintiff and defendant.

The plaintiff is the duly elected, qualified and acting trustee in bankruptcy of the property and assets of The Portage Rubber Company, a corporation organized and existing under the laws of the state of Ohio, with its principal place of business in Barberton in said state, and he was appointed such trustee by the United States District Court

---

Corporations, 14 C. J. § 731.

for the Northern District of Ohio, Eastern Division, said company having been adjudged a bankrupt on the 21st day of June, 1921.

The plaintiff in his amended petition alleged that said company had an authorized capital stock of $10,000,000, $5,000,000 of which was 7 per cent. cumulative preferred stock, divided into 50,000 shares of the par value of $100 each, and $5,000,000 of which was common stock, divided into 50,000 shares of the par value of $100 each; that on the 12th day of December, 1919, there were issued and outstanding 11,344 shares of the authorized preferred capital stock, and 23,619 shares of the common capital stock; that for the purpose of providing additional working capital, the board of directors of said company, by resolution passed upon the 19th day of December, 1919, authorized and directed the sale, at par, of 5,000 shares of its unissued common capital stock and 5,000 shares of its unissued preferred capital stock, the same to be offered in equal amounts of both common and preferred to its then common stockholders of record, each to be entitled to subscribe for such number of shares, both preferred and common, as would equal 20 per cent. of his then holdings of common stock. Under the terms of said resolution, said stock, both preferred and common, was to be paid for by the subscriber in four installments of 25 per cent. each, payable on the 5th days of February, March, April and May, 1920; that in pursuance of said resolution, notices were sent to all of the common stockholders of said company, offering said common and preferred stock to them upon the terms and conditions hereinbefore set

forth; that in accordance with said resolution, a large number of subscriptions, aggregating approximately $750,000, were received by said company, among which was one from said defendant, in which he agreed to take thirty shares each of the preferred and common stock of said company and pay therefor the aggregate sum of $6,000 at the times hereinbefore mentioned. The defendant refusing and neglecting to pay said subscription, the plaintiff brought an action at law in the court of common pleas of said county to recover the amount of said subscription, with interest. A copy of said subscription is the following, to-wit:

"I, the undersigned, being a holder of Common stock of The Portage Rubber Company, hereby subscribe for my share of the Common and Preferred stock of said The Portage Rubber Company offered for sale by you when as and if issued as set forth in the letter of Mr. M. S. Long, President of said The Portage Rubber Company, addressed to the stockholders of the Company under date of December 24, 1919.

"My holdings of Common stock of The Portage Rubber Company at the opening of the stock books of said Company on the morning of January 3, 1920, were 150 shares, as evidenced by certificates for said number of shares duly signed and executed, now in my possession and registered in my name. My subscription therefore based on 20 per cent. of such holdings, is and I hereby subscribe for 30 shares of each of Common and Preferred stock, for which I hereby agree to pay to the Company at the rate of one hundred dollars ($100.00) per share, each of both Common and Preferred

stock, payable as follows: 25 per cent. thereof on February 5, 1920; 25 per cent. on March 5, 1920; 25 per cent. thereof on April 5, 1920; 25 per cent. thereof on May 5, 1920; or payable in full on February 5, 1920, at my election.''

The defendant filed an amended answer, containing three defenses, the third and only one of which it is necessary for us to consider being the following, to-wit:

''Defendant says further that prior to the offer to its stockholders of the preferred and common stock of The Portage Rubber Company, which was the issuer of said stock, the said issuer, namely, The Portage Rubber Company, failed, neglected to, and did not file with the Securities Division of the Ohio Banking Department any certificate to show that said issue of stock was made or to be made in good faith, and not for the purpose of avoiding the provisions of the Blue Sky Law of the State of Ohio, for the sole account of the issuer, without any commission, and at a total expense of not more than two per cent. (2%) of the profits realized therefrom plus Five Hundred Dollars ($500), and that no part of the issue to be so disposed of was to be issued directly or indirectly in payment for patents, services, good will or for property not located in this state, as and in the manner as required by Section 6373-2 of the General Code of the state of Ohio. Defendant says that by reason of the failure of the issuer of said stock to bring itself within the terms and requirements of the statutes of the state of Ohio, in such case made and provided, and the offer and attempt to offer its said stock to its stockholders, as in the

plaintiff's petition set forth, was unauthorized and illegal, and that in the absence of such authority under the laws of the state of Ohio, or of such action upon the part of the officers of The Portage Rubber Company, exempting said proposed issue of stock from the provisions of the laws of the state of Ohio, permitting the same to be sold only under license, the said offer or attempted offer of its said stock to the defendant and other stockholders of The Portage Rubber Company, at the times mentioned in plaintiff's petition, was wholly unauthorized, illegal and without any authority in law, and that the pretended contract between plaintiff and defendant, which is set forth in plaintiff's petition, was and is, for such reason, wholly illegal and void."

To this defense the plaintiff filed a reply as follows:

"For his reply to the Third Defense in Defendant's Amended Petition as amended plaintiff avers that the shares of the preferred and common capital stock of The Portage Rubber Company, for which the defendant subscribed and agreed to pay as set forth in Plaintiff's Amended Petition, were a part of the increased capital stock, both preferred and common of said The Portage Rubber Company, a corporation organized under the laws of the State of Ohio; that said stock was then being offered by The Portage Rubber Company, a corporation organized under the laws of the State of Ohio, and being the issuer thereof, to its then common stockholders, in good faith and not for the purpose of avoiding the provisions of the 'Blue Sky Law,' so-called, of the State of Ohio, known

as Sections 6373-1 to 6373-24 of the General Code of the State of Ohio; that the sale of said stock was being made for the sole account of said The Portage Rubber Company, the issuer thereof, at the full par value thereof, and without any com- mission, cost or expense of any kind whatsoever to said The Portage Rubber Company; nor was any part of said stock, either common or preferred, then being offered by said The Portage Rubber Company to its then common stockholders of rec- ord, being issued either directly or indirectly in payment for patents, services, good will or for property not located in the said State of Ohio. Plaintiff admits that said The Portage Rubber Company 'did not file with the Securities Division of the Ohio State Banking Department, any cer- tificate, affidavits or proof (or other statement) showing or purporting to show that said issue of stock was made or to be made in good faith, and not for the purpose of avoiding the provisions of the Blue Sky Law of the State of Ohio for the sole account of the commissioner, without any commis- sion, and at a total expense of not more than 2 per cent of the profits realized therefrom, plus $500, and that no part of the issue to be so disposed of was to be issued directly or indirectly in payment for patents, services, good will or for property not located in this State.'

"Plaintiff expressly denies that the failure of said The Portage Rubber Company to file such certificate, affidavit, proof or statement as afore- said rendered the contract of subscription for said stock, executed and delivered by the defendant to said The Portage Rubber Company, 'illegal and

void' or in any wise affected the validity or en-
forcibility of the same.

"For further answer to said Third Defense,
plaintiff denies each and every allegation and state-
ment therein contained, except such as are herein
expressly admitted by him to be true."

When the case came on for trial, defendant made
a motion for a judgment upon the pleadings, which
motion was sustained by the trial court, the same
being based upon the third defense, and the plaint-
iff's petition was dismissed at his costs. The
plaintiff filed a motion for a new trial, which was
overruled, and the case is now here on error to
reverse that judgment.

A copy of the resolution passed by the board of
directors on the 19th day of December, 1919, is not
set forth in full in the pleadings, but the substance
of it is alleged in the amended petition, and that
such a resolution was passed is conceded by the
defendant.

The only questions we have to decide in this
case are: first, whether or not it was necessary
for the officers of said company to comply with
paragraph "f" of Section 6373-2 of the General
Code of Ohio, as a condition precedent to the re-
ceipt by it of subscriptions to its increased capital
stock by its then common stockholders; and second,
if it was, and it did not do so, whether the sub-
scription received by it from said defendant would
be enforcible in an action at law. Section 8699 of
the General Code, under which said stock was to
be offered to its common stockholders, is the fol-
lowing, to-wit:

"The holders of record of the common stock of

a corporation shall have the right, when and as issued, to subscribe for the increase stock or for new issues of stock of such corporation in such proportion as their respective common shares bear to the whole number of common shares already issued, at such price as the board of directors may fix. If any holder fails to avail himself of such right within the time fixed by the board of directors, the stock so unsubscribed may be disposed of in such manner as the board of directors prescribe. The right of any stockholders to subscribe for such stock shall not apply to any authorized and unissued stock appropriated by the board of directors, either for the purpose of retiring preferred stock or for any other purpose.''

Section 6373-1 of the General Code provides that:

''Except as otherwise provided in this act, no dealer shall, within this state, dispose or offer to dispose of any stock, stock certificates, bonds, debentures, collateral trust certificates or other similar instruments (all hereinafter termed 'securities') evidencing title to or interest in property, issued or executed by any private or quasi-public corporation, co-partnership or association (except corporations not for profit), or by any taxing subdivision of any other state, territory, province or foreign government, without first being licensed so to do as hereinafter provided.''

Section 6373-2 of the General Code, reads, in part, as follows:

''The term 'dealer,' as used in this act, shall be deemed to include any person or company, except national banks, disposing, or offering to dis-

pose, of any such security, through agents or otherwise, and any company engaged in the marketing or flotation of its own securities either directly or through agents or underwriters or any stock promotion scheme whatsoever, except:   *   *   *."

To this definition there are six exceptions set forth in said section, designated by the letters "a" to "f" inclusive.  Exception "f" is as follows:

"The issuer, organized under the laws of this state where the disposal in good faith and not for the purpose of avoiding the provisions of this act, is made for the sole account of the issuer, without any commission and at a total expense of not more than two percentum of the proceeds realized therefrom plus five hundred dollars and where no part of the issue to be disposed of is issued, directly or indirectly, in payment for patents, services, good will, or for property not located in this state; provided that the president and secretary, or the incorporators if done before organization, of the issuer shall, prior to such disposal, file with the 'commissioner' a written statement setting forth the existence of all such facts and that such issuer is formed for the purpose of doing business within this state."

In the foregoing definition of the term "dealer" there is included, (1) any person or company, except national banks, disposing or offering to dispose of any such securities through agents or otherwise; (2) any company engaged in the marketing or flotation of its own securities, either (a) directly, or (b) through agents or underwriters, or (c) through any stock promotion scheme whatsoever.

Did the said company, in doing that which has been hereinbefore set forth, come within one of the foregoing subdivisions of the term "dealer"? It was not included within the first subdivision, because it was not attempting to dispose of securities generally, through agents or otherwise, and the company, in reference to its own stock, could not be included within said subdivision because it was especially exempted therefrom by the second subdivision, which makes special provision for a company engaged in the marketing or flotation of its own securities. Said company could not come within the terms of subdivisions 2(b), because it was not engaged in the marketing or flotation of its own securities through agents or underwriters; and the disposal of said securities by it could not be classed as or claimed to be a stock promotion scheme of any kind, as designated and described in 2(c). So the question remains, Was said company, as the issuer of said stock, under the circumstances, engaged "directly" in the marketing or flotation of its own securities, as described in subdivision 2(a)?

By Section 8699, *supra,* the defendant had the right to subscribe for the 60 shares of stock as he did, and the company was required to allot him said stock at the price and upon the terms fixed by the board of directors. The price thus fixed and the terms and conditions upon which the stock was to be paid for and issued would have to apply to all stockholders alike and without discrimination, and one could not have more favorable terms granted to him than another.

When the board of directors of said company

passed the resolution by which it decided to increase the number of issued shares of the capital stock of said company, the rights of the common stockholders to subscribe for their proportionate share of said increase of said stock immediately attached, and said directors did not have the power to deny or take from said common stockholders their subscription rights and offer said stock to others than said common stockholders, until the prior rights of the common stockholders had been taken away by proceedings which are approved by law.

The number and the persons who had a right to subscribe for this stock were limited and designated by law. The company was not offering the stock to the public indifferently or taking subscriptions for any number of shares that anyone might desire to purchase, but was merely following out the mandate of the law and receiving subscriptions from its then common stockholders, in the amounts limited and fixed by law, and, aside from fixing the number of new shares to be issued in the aggregate, all the board of directors did was to fix the price and the terms and conditions upon which the stockholders who exercised their statutory rights should pay for their proportionate number of shares of the increase stock.

*The company was not offering said stock to its stockholders: the law itself was doing this.* The right of the common stockholders to subscribe for said stock was an option given them by law, and the law imposed an obligation upon the officers of said company to recognize the subscriptions thus made. Section 8699, *supra,* sets forth the manner

by which said stockholders may subscribe for their shares of said stock, and when the proper officers of said company notified the common stockholders of the action of the board of directors, said company was not engaged in the marketing or flotation of its own securities within the contemplation of the Blue Sky Law, and we do not believe that it was the intention of the law-making body of this state, under these circumstances, to require a corporation, as a condition precedent, to comply with the provisions of the Blue Sky law before it could lawfully receive subscriptions from its own stockholders for new stock as required by Section 8699. For a company to be engaged in the marketing and flotation of its own securities, affirmative action is required on the part of its board of directors and officers: an offering by them to the public of its stock and the elements of sale and purchase. In the instant case it is true that the directors were using the word "sale" in the disposition of the company stock, but this could not change the meaning attached to the transaction by law or affect the rights of the stockholders as fixed by law. The ones who had the right to subscribe for this new stock were the then part owners of the company, called the common stockholders, and as such and for this reason were given this preferential right before offerings of said stock could be made to the public.

Having answered the first question hereinbefore set forth as we have, it necessarily follows that the second question requires no answer.

Being unanimously of the opinion that the trial court committed prejudicial error in rendering

judgment upon the pleadings in favor of said defendant, we reverse said judgment and the cause is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

Funk, P. J., and Washburn, J., concur.